STATE of Iowa, Appellee,

v.

Otho RATER, Appellant.

No. 96–191.

Supreme Court of Iowa.

July 23, 1997.

Linda Del Gallo, State Appellate Defender, and Sarah E. Hennesy and Tricia A. Johnston, Assistant State Appellate Defenders, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, John P. Sarcone, County Attorney, and Mark Godwin, Assistant County Attorney, for appellee.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

This appeal primarily concerns the defendant's Sixth Amendment right to counsel and the defendant's rights under the Double Jeopardy Clause of the United States Constitution. Rater was convicted by the court for contempt and by a jury for criminal non-support of his children. He appeals the criminal non-support conviction. We reverse and remand for a new trial.

## I. Background Facts and Proceedings

In 1987, the marriage of Maja Elizabeth Rater and Otho Rater was dissolved. Otho Rater was ordered to pay monthly child support of $850 for their four minor children. At that time he was employed as a mathematics professor at Grand View College in Des Moines, Iowa. In 1992, the court modified the decree after the eldest of the four children reached majority. The court ordered Rater to pay $816 per month for the three remaining minor children.

After receiving an unfavorable evaluation from Grand View's promotion committee, Rater notified the college in September 1991 that he would not return to his employment after the 1991–92 school year. Rater apparently stopped making child support payments some time after December 1992.

On November 5, 1993, the court, sitting in equity, found Rater in contempt for failing to comply with the court's child support order. It determined that Rater willfully failed or refused to comply with the order of the court. The court entered separate findings of contempt for the months of December 1992 through September 1993. Later, the court sentenced Rater to thirty days in the Polk County jail on each of the ten offenses. It ordered six of the sentences to be served consecutively, while the other four were ordered to run concurrently with the first 120 days. The court suspended all but the first sixty days of the sentence on the condition that Rater attempt to find employment and pay $50 per month in back child support.

On November 3, 1994, a grand jury indicted Rater on fourteen counts of criminal non-support. B. John Burns was appointed to represent him. Burns filed an application for a psychological evaluation of Rater and the court granted the application on April 21, 1995. Thereafter, Burns filed an application to withdraw as counsel due to a disagreement with Rater apparently over the psychological evaluation. That application to withdraw was granted on May 22, and another attorney was appointed. This second attorney's application to withdraw was granted on May 30 because she had previously represented Rater's wife. A third attorney was appointed and the court granted his oral motion to withdraw on June 2. The court then appointed Michael Blazek to serve as Rater's counsel.

Rater subsequently waived his right to speedy trial and trial was continued from June 12, 1995 to November 13, 1995. On September 9, Rater requested new counsel.

At the hearing, Rater contended that Blazek was refusing to assert the issues and defenses Rater believed were meritorious. Blazek responded that Rater should complete the psychological evaluation that was previously ordered because he had some concerns as to whether Rater could completely understand the defenses. Rater initially resisted the evaluation, but eventually agreed to complete it after District Judge Pille informed him it was confidential and the State would not have access to it unless Rater asserted a competency defense. The court stated that after the evaluation was completed, they would then discuss whether new counsel was necessary. On September 22 the court ordered Rater to complete an evaluation.

On October 4, Rater sent a letter to Judge Pille asserting his right to act as his own attorney and requesting (1) the order requiring him to undergo the evaluation be set aside, (2) Blazek be replaced by new counsel, and (3) Judge Pille recuse himself due to bias. On October 17, Blazek filed a motion to withdraw because of his concerns about Rater's mental capacity and his refusal to undergo an evaluation.

At the October 20 hearing, Rater stated he only agreed to the evaluation to "please the court" and he really did not believe it was necessary. Judge Pille responded that he did not believe the record reflected that there was proper foundation to order the evaluation absent Rater's consent, but believed that all parties agreed to the evaluation for Rater's own protection. The prosecutor informed the court that one reason for the evaluation was that Rater allegedly hid in a false wall of a closet for five months after an arrest warrant was issued following the grand jury indictment. The prosecutor then contended Rater was attempting to drag out the proceedings. Blazek informed the court that he would agree to represent Rater only if Rater obtained an evaluation.

The court determined that Blazek was competent counsel and that Rater could either proceed to trial with Blazek as his counsel or proceed to trial with Blazek as his stand-by counsel. Rater argued that Blazek should be allowed to withdraw because Rater refused to undergo a psychological evaluation and because Rater stated he wanted "assistance of counsel that he didn't have these kinds of problems with." After further discussion about the number of attorneys that had been appointed already and the State's insistence upon trial on November 13, the court's final order continued Blazek as stand-by counsel.

Rater subsequently filed ten motions, including a motion based upon double jeopardy. At the hearing on those motions on November 13, Rater indicated he wanted to represent himself, but wanted the assistance of a more active co-counsel than Blazek. Judge Gene Needles overruled all motions but continued the trial date to November 27. At a pretrial conference on November 22, Rater again explained he did not feel he was qualified to represent himself at trial. Blazek agreed to assume full defense counsel status only if Rater obtained an evaluation. Blazek also expressed concern about being able to prepare for trial with only five days notice. Rater agreed to obtain the examination. Judge Glenn Pille denied a further continuance and ordered that Blazek assist Rater at trial as stand-by counsel.

On the day of trial, Rater again told the court he did not feel comfortable representing himself at trial. Judge Needles responded that Judge Pille had already ruled on that issue. The trial proceeded and Rater was convicted by a jury on all fourteen counts of criminal non-support. The court denied all posttrial motions and sentenced Rater to concurrent, indeterminate five-year terms of imprisonment on each count.

On appeal, Rater argues that his rights under the Sixth Amendment and under the Double Jeopardy Clause of the United States Constitution have been violated.

## II. Scope of Review

Our review of this matter is de novo, constitutional issues being involved. *State v. Spencer*, 519 N.W.2d 357, 359 (Iowa 1994).

## III. Sixth Amendment

A. The Sixth Amendment to the United States Constitution guarantees that "in all criminal prosecutions, the accused shall enjoy

the right ... to have the Assistance Of Counsel for his defense." U.S. Const. amend. VI. After considerable discussion between the defendant Rater, his counsel, and the court, the final decision by the court was that Rater would defend himself pro se, with the assistance of Blazek as stand-by counsel. The question raised on appeal is whether that arrangement violated Rater's Sixth Amendment rights. The State believes that no violation occurred because Rater exercised his right to self-representation and the court properly denied Rater's waiver of this right.

■ B. The United States Supreme Court has stated that "the Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562, 572 (1975). Unlike the Sixth Amendment right to counsel, which is in effect until waived, the right of self-representation is not effective until asserted. *Williams v. Bartlett*, 44 F.3d 95, 100 (2d Cir.1994); *Burton v. Collins*, 937 F.2d 131, 133 (5th Cir.1991). The Eighth Circuit Court of Appeals has held that "to invoke his or her right to represent himself or herself, a defendant must knowingly, intelligently, voluntarily, and unequivocally waive his right to counsel and state his intentions to represent himself." *Hamilton v. Groose*, 28 F.3d 859, 861 (8th Cir.1994), *cert. denied*, 513 U.S. 1085, 115 S.Ct. 741, 130 L.Ed.2d 643 (1995).

■ In a state criminal trial, a defendant has a Sixth and Fourteenth Amendment right under the United States Constitution to self-representation. *Faretta*, 422 U.S. at 806, 95 S.Ct. at 2532, 45 L.Ed.2d at 572. Before the right attaches, the defendant must voluntarily elect to proceed without counsel by "knowingly and intelligently" waiving his Sixth Amendment right to counsel. *Id.* at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582. In addition, the defendant's request to proceed without counsel must be "clear and unequivocal." *Id.* Before a trial court accepts the request, the court must make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (quoting *Adams v. United States*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)).

In *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), the Supreme Court delineated the rights that are to be afforded a pro se defendant in order to ensure that the Sixth Amendment rights outlined in *Faretta* are upheld. In *McKaskle*, the Court held that a court may appoint "stand-by counsel" over a defendant's objection. *McKaskle*, 465 U.S. at 179, 104 S.Ct. at 951, 79 L.Ed.2d at 134. In so ruling, the Court outlined two general limitations upon stand-by counsel's unsolicited participation at trial. *Id.* at 178–79, 104 S.Ct. at 951, 79 L.Ed.2d at 133–34. First, the pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury. *Id.* at 178, 104 S.Ct. at 951, 79 L.Ed.2d at 133. Second, participation by stand-by counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself. *Id.* at 179, 104 S.Ct. at 951, 79 L.Ed.2d at 133. Essentially, stand-by counsel has two purposes—to act as a safety net to ensure that the litigant receives a fair hearing of his claims and to allow the trial to proceed without the undue delays likely to arise when a layman presents his own case.

C. Analysis

The State focuses its Sixth Amendment argument on its claim that the defendant asserted his right of self-representation and later failed to effect a proper waiver of that asserted right. The evidence pointed out by the State includes a letter to Judge Pille dated October 4, 1995, in which the defendant complained that a "serious conflict of interest" existed between he and his attorney Michael Blazek. He informed the court in this letter that there were defenses he wanted to raise which he believed were meritorious and that he would not be intimidated into accepting a plea agreement, nor would he try to establish his incompetency. Defendant asserted that he had a "constitutional right to act as his own attorney."

The State acknowledges that the record does not contain an exchange between Rater and the district court whereby the court explained to Rater that he was entitled to counsel at all critical stages, nor is there an admonishment as to what defendant faces by representing himself. The State argues that despite these facts, defendant's waiver of counsel was voluntary. The State supports its argument by stating that the defendant was familiar with the legal process, that he had already been convicted by the court for contempt, and that he was highly educated and an intelligent person, holding a bachelor's degree and a master of science degree in mathematics. The defendant was also pursuing a master's degree in counseling at Drake University and had a 3.85 grade point average in the program. Defendant formerly held jobs in the areas of mathematics, science, computer programming, farming, and commodities future trading.

The State claims that the defendant was well versed in principles relating to legal representation and that he demonstrated this by objecting that attorney Blazek's representation was "substantially below the normal range of expected attorney competence." Rater had stated that he had discovered "strong defenses" through his own research, challenged the order of the psychiatric evaluation because he understood the charges against him, and requested that his motions be ruled upon in a timely fashion so that he might pursue an "interlocutory appeal if necessary."

On the issue of Rater being well aware of the dangers of self-representation, the State asserts that he showed he was by complaining that the rules and procedures were too complex for him to handle without the help of counsel. On both occasions, the court reminded defendant that he had the help of stand-by counsel.

The State argues that Rater's complaint is that the district court failed to appoint an attorney who would raise the defenses that the defendant wanted raised. In essence, the State asserts the defendant sought "hybrid representation," which the United States Supreme Court has specifically disallowed. *See McKaskle,* 465 U.S. at 183, 104 S.Ct. at 953, 79 L.Ed.2d at 136 (a defendant does not have a constitutional right to choreograph special appearances by counsel). The State thus concludes that the defendant knowingly, voluntarily, and intelligently waived his right to representation so that he could assert his own defenses.

There is no doubt that the defendant's actions presented a difficult situation for the trial court to handle. There had been long delays occasioned by numerous changes of counsel for Rater. The trial was imminent and the court was anxious to have the matter proceed. In determining that Rater would represent himself with stand-by counsel at trial, the district court placed considerable reliance on Rater's letter to the court requesting permission to proceed pro se. The letter apparently arose out of Rater's disagreement with counsel on the appropriateness of Rater having a psychological evaluation. The issue came before Judge Pille on October 20, 1995. At that hearing, attorney Blazek told the court:

> I have some concerns, as I raised at the previous hearing, about [Rater's] ability to appreciate the charge, understand these proceedings and assist effectively in his own defense. I have indicated to the court earlier that I am not able to make any conclusions about that. I believe though that the threshold is there for a mental health professional to make some conclusions and that's why I previously addressed these matters to the court ... I guess my bottom line, your Honor, would be that I would be willing to remain Mr. Rater's attorney, number one if he would be willing to keep me as his attorney and number two, if he would proceed with the evaluation. Otherwise, I really believe it would be impossible for me to continue to represent him.

The court informed the defendant:

> Well, quite honestly, Mr. Rater, I am not convinced that your attorney is incompetent, Mr. Blazek. It is apparent to me that you want to represent yourself in these proceedings. You do not want an evaluation. If the State wants to go to trial on the 14th, then I am inclined to say, fine, let's go to trial on the 14th. If you

are not willing to undergo the evaluation or have Mr. Blazek represent you in the proceedings, I think that I should at least provide that he be present as stand-by counsel if you wish to consult an attorney during the proceedings. But quite honestly, I think you ought to go to trial. The State ought to go to trial on the 14th, and you ought to present what evidence you want if you're unwilling to do this evaluation.

Later the court asked Rater, "Then we are looking at you representing yourself solely?" Defendant Rater responded:

No, no. I wish assistance of counsel, but I wish assistance of counsel that I don't have these kinds of problems with. And I feel that if I am allowed to represent myself and be more in charge of the defense, these problems won't arise. That's my hope. I certainly would try to cooperate with any new counsel.

The court concluded, "The court will continue Mr. Blazek as stand-by counsel here to assist you in whatever fashion you wish. I am still confirming the trial date as set. That's all. We are adjourned."

The record indicates that the court did not engage in an inquiry to determine whether the defendant's waiver was knowing and intelligent. This matter was of particular importance, given attorney Blazek's concern and that of attorney B. John Burns, who initially represented the defendant, as to the defendant's competence to stand trial. *See United States v. Cash,* 47 F.3d 1083 (11th Cir.1995) (reversing defendant's conviction because appellant's psychological problems rendered questionable his decision to represent himself in the face of the trial court's mere general admonitions that self-representation was unwise).

■ Competency to stand trial is judged by the same standard as competency to waive the right to counsel. *Godinez v. Moran,* 509 U.S. 389, 400, 113 S.Ct. 2680, 2686–87, 125 L.Ed.2d 321, 330–32 (1993).

Courts generally agree that there is special need for an extensive explanation of the pitfalls of self-representation where the defendant states he has some doubts about

proceeding pro se but will do so because the court will not replace appointed counsel or grant a continuance permitting him to retain new counsel.

Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 11.5(c), at 47 (1984).

■ The State has the burden of proving the waiver was valid. *Michigan v. Jackson,* 475 U.S. 625, 633, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631, 640 (1986). In *State v. Hindman,* we stated that the degree of inquiry which is required in order to assure a valid waiver of the Sixth Amendment right to counsel varies with the nature of the offense and the ability of the accused to understand the process. *State v. Hindman,* 441 N.W.2d 770, 772 (Iowa 1989). We found the degree of inquiry was adequate where the offense charged was operating a motor vehicle while under the influence of alcohol, an offense readily understood by lay persons. *Id.* By contrast, in addition to the suspicions voiced by Rater's attorneys that he might not be competent to stand trial, the charges against Rater were infrequently employed by the State. Also, defendant Rater was without experience in the criminal justice system.

Apart from the questionable sufficiency of inquiry by the court, it cannot be said from the record that the waiver by Rater was unequivocal, particularly as trial time approached. At the pretrial conference on November 22, five days before the date set for trial, Rater informed the court that he was "really totally unqualified to handle the trial." He told the court, "I've tried to get ready for this trial. I have read rules of evidence and they are numerous and subtle. There is no way I can adequately defend myself in court. And so I would agree to whatever Mr. Blazek requires if you continue him as counsel." Blazek told the court he was willing to proceed as counsel for Rater but could not be prepared in five days. The court told Rater:

You've chosen this route, and the court is going to make you live with this one. So I am going to confirm the trial date for Monday. Mr. Blazek will be present and handy, and you may use him as your attorney to the extent that the law allows you to.

At the end of the hearing, the following exchange took place between Rater and the court:

THE DEFENDANT: I feel myself completely unqualified to handle this trial. I believe it would be a travesty of justice for you to require me to represent myself at this trial, and I vehemently object to that.

THE COURT: Mr. Blazek is going to represent you.

THE DEFENDANT: No, he's stand-by. He has given me to understand I must initiate everything. I must do the questioning, the voir dire, the preparation of jury instructions, to be able to understand and timely make objections to irrelevant or inadmissible evidence. And I feel totally unqualified. I don't think I can possibly handle that.

THE COURT: Well, he will be there to assist you as appointed stand-by counsel. This trial is confirmed for Monday.

On the morning of the date set for trial, November 27, 1995, Rater again informed Judge Needles that he was overwhelmed by the dangers of self-representation.

I would like to renew the motion for a change of the assistance of counsel status or arrangement for the defendant. Defendant feels almost totally unqualified to conduct a defense at trial in spite of his best efforts to prepare. There is such a great gulf of ignorance as to trial criteria, rules of evidence, grounds for objection.

. . . .

The defendant has no experience with trial procedure. Even now there are questions as to how to do what when.

. . . .

It's defendant's understanding that Mr. Blazek would perhaps resume the defense if the defendant agrees to take a psychological evaluation. And he noted to Judge Pille that he would agree if that was the only way to get a professional counsel to actively partake in the defense.

The court told Rater this issue had already been ruled upon by Judge Pille and the court would not address it again. The trial proceedings began immediately after this exchange.

This record shows that at the stage of proceedings five days before trial and at trial time itself, the question was no longer whether Rater had waived his Sixth Amendment right to counsel unequivocally, but whether he would be held to the consequences of the court's earlier determination that he would have to represent himself with stand-by counsel. Clearly, Rater did not want this arrangement to be imposed upon him at trial. In evaluating the record, we indulge in every reasonable presumption against waiver. *See State v. Newsom,* 414 N.W.2d 354, 358 (Iowa 1987); *State v. Nelsen,* 390 N.W.2d 589, 592 (Iowa 1986).

■■■■ In considering the significance of stand-by counsel, we note that the appointment of stand-by counsel is insufficient to satisfy the Sixth Amendment right to counsel when the court has failed to conduct an inquiry to ensure the defendant's waiver of that right was knowing and intelligent. *See United States v. Sandles,* 23 F.3d 1121, 1128 (7th Cir.1994); *United States v. Padilla,* 819 F.2d 952, 956–57 (10th Cir.1987). Also, while a defendant has a right to waive the assistance of counsel and conduct his own defense, if stand-by counsel is appointed, the defendant "remains free ... to elevate stand-by counsel to a lead counsel role, thereby waiving the defendant's *Faretta* right." *United States v. Swinney,* 970 F.2d 494, 498 (8th Cir.1992). We find from this record that Rater not only objected to the consequences of the appointment of stand-by counsel, but clearly attempted to elevate stand-by counsel to a lead counsel role, thereby waiving his *Faretta* rights.

■■■■ Whether Rater was actually prejudiced by the court's failure to conduct a sufficient inquiry or by its decision to require him to proceed pro se is immaterial. Harmless error analysis is not applicable to Sixth Amendment right to self-representation questions. *See McKaskle,* 465 U.S. at 177 n. 8, 104 S.Ct. at 950 n. 8, 79 L.Ed.2d at 122 n. 8; *Abdullah v. Groose,* 44 F.3d 692, 696 (8th Cir.1995).

We hold that an insufficient inquiry was conducted by the trial court to ensure that Rater's waiver of his right to counsel was intelligent, done knowingly with an awareness of the pitfalls inherent in self-representation, and that defendant was competent to make that decision. We hold that for lack of sufficient inquiry by the court, a valid waiver of Rater's Sixth Amendment right to counsel did not occur. Further, we hold that even if proper inquiry had occurred, the court erred in denying Rater's later waiver of his right of self-representation. For these reasons we hold that Rater is entitled to a new trial.

## IV. Double Jeopardy Issue

Iowa Code chapter 726, concerning the protection of the family and dependent persons, contains the pertinent provisions on criminal non-support. Section 726.5 provides:

> a person, who being able to do so, fails or refuses to provide support for the person's child or ward under the age of eighteen years commits non-support.... Support, for the purposes of this section, means any support which has been fixed by court order, or, in the absence of any such order or decree, the minimal requirements of food, clothing or shelter. Non-support is a class "D" felony.

Defendant claims that the district court erred in finding that the 1993 contempt prosecution for failure to pay child support and the criminal non-support charges in 1994 were not successive prosecutions for the same offense, and therefore not in violation of the Double Jeopardy Clause of the United States Constitution. Prior to trial, Rater filed a motion entitled "Motion to Quash Instant Indictment" in which he argued the criminal non-support charges constituted double jeopardy in violation of the United States Constitution. Later, he filed another motion arguing that the criminal charges were barred by the Double Jeopardy Clause. The trial court overruled both motions.

The Double Jeopardy Clause of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause protects against three distinct constitutional violations. These include (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194 (1977). This protection is binding on the states through the Fourteenth Amendment to the federal constitution. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969).

Defendant asserts the Double Jeopardy Clause bars his prosecution for criminal failure to pay child support from October 1993 to November 1994, because he had already been found in contempt in ten separate instances for a failure to pay child support from the months of December 1992 through September 1993. Defendant concludes that the contempt action and the criminal prosecutions constitute punishment for the "same offense" for purposes of the Double Jeopardy Clause.

■■■ Defendant contends that his failure to pay child support is a continuing course of conduct which constitutes a single, ongoing offense. He thus argues that the contempt and criminal actions both punish him for one ongoing offense, even though they concerned different periods of time. Under a double jeopardy claim, the "continuous offense doctrine" prohibits multiple convictions of a defendant who commits only one continuous offense. *State v. Aguiar–Corona*, 508 N.W.2d 698, 703–04 (Iowa 1993) (citing *Frink v. Iowa*, 968 F.2d 734, 737 (8th Cir.1992)) (The test for determining whether the continuous offense doctrine applies "is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately.... If the latter, there can be but one penalty." *Blockburger v. United States*, 284 U.S. 299, 302, 52 S.Ct. 180, 181, 76 L.Ed. 306, 308 (1932)).

On this third prong—multiple punishments for the same offense—we have recognized that "the question of what punishments are constitutionally permissible is no different

from the question of what punishments the legislature intended to be imposed." *State v. McKettrick,* 480 N.W.2d 52, 57 (Iowa 1992).

Recently in *State v. Hippler,* 545 N.W.2d 568 (Iowa 1996), we addressed the concept of a continuing offense. We quoted, with approval, language adopted by the Montana Supreme Court that:

> "A particular offense should not be construed as continuing" unless the *explicit language of the substantive criminal statute compels such a conclusion,* or the nature of the crime involved is such that [the legislature] must assuredly have intended that it be treated as a continuing one.

*Hippler,* 545 N.W.2d at 572 (quoting *State v. Mullin,* 268 Mont. 214, 886 P.2d 376, 378 (1994)). In looking at its theft statute, the Montana Supreme Court found no language in it that said that the offense of theft was a continuing offense. *Id.* Further, the court concluded that the nature of the crime did not compel a conclusion that the legislature intended the crime to be treated as continuous. *Id.*

■ The language of the Iowa non-support statute, section 726.5, does not compel the conclusion that non-support is a continuous offense and thus, the "same offense" for double jeopardy analysis. The statute gives no indication that failure to pay child support is an ongoing offense. The statute specifically refers to support which has been fixed by court order. In the case at bar, the court order required defendant Rater to pay child support each month. The statutory language indicates that the legislature intended that a separate crime is committed on each occasion of failure to pay child support. Thus, a separate crime would be committed each month that a defendant failed to pay child support as ordered at the particular time the child support is due. If non-support were a continuing offense, Rater could only be prosecuted for one violation during the entire span of time he is required to support his minor children. Under Rater's interpretation of the statute, once a single child support payment was missed, any legal incentive for continued, future payments would vanish as the punishment would be the same wheth-

er the parent missed one payment or many payments.

In construing statutes, we look to the object the legislature sought to accomplish and the evils and mischief sought to be remedied to reach a result that will best effectuate its purpose. *State v. Peterson,* 347 N.W.2d 398, 402 (Iowa 1984). The purpose of section 726.5 is to provide child support for dependent children whose requirements for food, clothing, and shelter are on an ongoing basis during their dependency. The obvious purpose of the legislature in enacting this non-support statute is to enforce parental support of dependent children. Defendant's interpretation would defeat this objective of the legislature and is contrary under our cases to our determination of legislative intent. For the above reasons, we hold that the constitutional protection of defendant against double jeopardy has not been violated.

This case is reversed and remanded for a new trial consistent with this opinion.

**REVERSED AND REMANDED.**