STATE of Iowa, Appellee,

v.

Jeff Alan STEPHENSON, Appellant.

No. 98–114.

Supreme Court of Iowa.

March 22, 2000.

Rehearing Denied April 10, 2000.

Linda Del Gallo, State Appellate Defender, and John P. Messina, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, David Skilling, County Attorney, and Conrad Meis, Assistant County Attorney, for appellee.

SNELL, Justice.

The State seeks further review of an appellate court decision which held the defendant, Jeff Allen Stephenson, did not validly waive his Sixth Amendment right to counsel. Defendant cross-appeals, contending the State failed to prove an essential element of the crime, and that his sentence was illegal. We affirm the decision of the court of appeals, reverse the judgment of the district court and remand for a new trial.

## I. Background Facts and Proceedings

On July 28, 1997, Darlene Stephenson was at home recuperating from a recent surgery, when her friend, Julie Winkel, received a message advising her that it might be prudent to check on Darlene's welfare. When Julie visited the Stephenson household later that day it was readily apparent Darlene was not feeling well. Julie attempted to comfort her friend but Darlene's son, the defendant, quickly became enraged. He was intoxicated and in an ill humor, complaining about his mother's loss of appetite. He assumed a belligerent posture toward Julie and made it clear that he resented her presence. Julie left only to be summoned back by a concerned neighbor. Darlene's condition had worsened and unbeknownst to anyone at the time, she was bleeding internally and needed immediate medical attention. Julie suggested the advisability of consulting a physician at which point defendant accosted her with profanity and accused her of meddling in affairs which were none of her business. When a nurse arrived shortly thereafter, it was determined Darlene would need to see a doctor. The three women subsequently went to a clinic leaving defendant home alone.

Defendant later phoned Julie's residence and left an angry message with her husband Eldon. He then had a friend attempt to contact Julie at the clinic for the purpose of inquiring as to his mother's health. Defendant eventually called the clinic himself and demanded to speak with his mother. Darlene apparently did not feel well enough to accept the call so she asked Julie to respond on her behalf. Defendant became irate when Julie answered the phone. He reviled her with obscenities and stated, "I'm going to kill you Julie Winkel."

At the time, Julie was not unduly concerned by the threat. She was familiar with the defendant's troubled and violent past, had known him for approximately

thirty years and largely regarded him as a short tempered bully.

Defendant, however, again called Julie's home reiterating his earlier threat to her husband, a local attorney who subsequently informed the police. In the meanwhile, it became necessary to transfer Darlene to a hospital in Mason City. Darlene beseeched Julie to inform her son, and although uncomfortable with the request, Julie acquiesced. Stephenson responded with yet another verbal assault in which he exclaimed "Goddamn you Julie Winkel with your highfalutin ideas. You just cost me $10,000. I'm going to kill you."

At this point Julie became concerned for her safety. Her distress only intensified after receiving another call that evening in which the Winkels were warned Stephenson was acting irrationally and had threatened to "kill them with a gun."

Defendant was arrested that night and charged with one count of first-degree harassment in violation of Iowa Code section 708.7(2) (1997) (telephone harassment). The charge was based on the two calls in which Stephenson spoke directly to Julie at the clinic and made threats on her life, neither of which he initiated. Two attorneys were appointed to represent Stephenson, but each withdrew. At his arraignment defendant was told he had a right to counsel and that a lawyer would be provided for him if he could not afford one. Stephenson indicated his preference to act as his own attorney. He later vacillated on the issue, but eventually decided to proceed with the aid of standby counsel. No formal inquiry into defendant's decision was ever made for the record. However, a district associate court calendar entry reveals that:

"the undersigned judge visited with the defendant on the evening of October 20, 1997, and [he] was still a little resistant to the appointment of stand-by counsel, but I explained the necessity of this to him and that it was the court's decision, not his."

In addition to the October 20, 1997 calendar entry by the district associate court, an October 14 administrative order noted, "[t]he Defendant has indicated to the Court that he wishes to proceed pro se, although no formal record has been made on this, but that the Defendant has requested standby counsel."

No other colloquy was initiated regarding the nature of the charges, the dangers of proceeding without counsel, available defenses or the trial process in general.

A jury trial commenced soon thereafter in which the defendant was found guilty as charged. Stephenson was sentenced to twenty-four months in the county jail with six months suspended. Owing to the apparent illegality of the sentence, the trial court redirected defendant to serve eighteen months with the Department of Corrections in addition to two years probation and a $1000 fine.

Defendant appealed his conviction and advanced the following three arguments:

1. His conviction should be vacated because the district court failed to make a sufficient inquiry regarding the waiver of his Sixth Amendment right to counsel, as is required by state and federal law;

2. There is insufficient evidence to support the charge of harassment because he did not initiate the telephone conversations which served as the basis for the indictment; and

3. The sentence imposed by the trial judge does not conform to state mandates.

The court of appeals reversed Stephenson's conviction holding the State failed to prove defendant's waiver of counsel was valid. It then remanded the matter for retrial, finding substantial evidence existed upon which to found the harassment charge. It also noted that Stephenson's sentence was illegal because an eighteen-month term is not recognized by law, and because probation cannot be ordered with-

out a suspension of sentence or a deferral of judgment.

The State now seeks further review to reinstate defendant's conviction. Stephenson cross appeals, again asserting his claim of insufficient evidence. Both parties agree the sentence imposed by the trial court was illegal.

## II. Waiver

■ Constitutional challenges are reviewed de novo. *State v. Rater,* 568 N.W.2d 655, 657 (Iowa 1997); *State v. Spencer,* 519 N.W.2d 357, 359 (Iowa 1994).

■ The Sixth Amendment to the United States Constitution guarantees an accused the right to legal representation. *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562, 566 (1975); *Rater,* 568 N.W.2d at 658. In accordance with this right a criminal defendant may opt to proceed without an attorney and to conduct his or her own defense. *Faretta,* 422 U.S. at 819, 95 S.Ct. at 2533, 45 L.Ed.2d at 572; *Rater,* 568 N.W.2d at 658. However, before a trial court honors an accused's request to waive the right to counsel, it must satisfy itself the defendant's election is voluntary, knowing, and intelligent. *Faretta,* 422 U.S. at 835–36, 95 S.Ct. at 2541, 45 L.Ed.2d at 582; *Rater,* 568 N.W.2d at 658 (a waiver must also be unequivocal). In making this determination courts are required to engage the accused in a colloquy sufficient to apprise a defendant of the dangers and disadvantages inherent in self-representation. *Patterson v. Illinois,* 487 U.S. 285, 298–99, 108 S.Ct. 2389, 2398, 101 L.Ed.2d 261, 276–77 (1988); *Faretta,* 422 U.S. at 835–36, 95 S.Ct. at 2541, 45 L.Ed.2d at 582; *Von Moltke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 323, 92 L.Ed. 309, 320–21 (1948); *Rater,* 568 N.W.2d at 658. The degree of inquiry necessary to assure a valid waiver varies with the nature of the offense and the ability of the accused to understand the process. *Rater,* 568 N.W.2d at 660. This colloquy serves a dual purpose. It safe-guards the constitutional guarantees of the accused, and by creating a formal record, it insulates the judiciary from claims of abuse.

■ The record in this case shows the trial court did not satisfy its *Faretta* duty to inquire further into Stephenson's decision to proceed pro se. The State, however, maintains Stephenson failed to obtain transcripts of discussions in which the issue of waiver was allegedly raised. The State avers defendant bears the burden of providing a transcript or supplemental statement of those proceedings, and that his failure to do so resulted in an automatic waiver of the issue on appeal. *See* Iowa R.App. P. 10(c).

Alternatively, the State contends that regardless of whether a colloquy took place, Stephenson's waiver of counsel was still voluntary, knowing and intelligent. The State cites in support the fact that Stephenson is familiar with the judicial process, having been previously convicted of a felony. Also, the State claims he was competent in the handling of his defense, filing motions, examining witnesses, and lodging objections.

■ We recently addressed the State's arguments in *State v. Cooley,* 608 N.W.2d 9 (Iowa 2000). There we held that pursuant to Iowa Rule of Appellate Procedure 10(c), in addressing the issue of waiver of counsel, the burden of proving a valid waiver lies with the State. It is the State's responsibility, therefore, to prepare the record for appeal; defendant's failure to do so does not result in a waiver of the issues on appeal.

■ Moreover, a trial court has an absolute duty to indulge the accused in an on the record colloquy. *Cooley,* 608 N.W.2d at 14. There is no indication the trial court fulfilled this duty, nor has the State provided evidence to the contrary. A failure to abide by this procedure cannot be overcome by harmless error analysis. *Cooley,* 608 N.W.2d at 17; *Rater,* 568

N.W.2d at 661. Accordingly, the failure of the trial court to conduct an adequate inquiry to determine if Stephenson's attempted waiver of his right to counsel satisfied constitutional requirements results in reversible error. The proceedings by which Stephenson was convicted violated his Sixth Amendment right to counsel under the United States Constitution.

### III. Sufficiency of the Evidence

■ Stephenson's claim of insufficient evidence is essentially a question of statutory construction. Our review is therefore for errors at law. *State v. Eickelberg*, 574 N.W.2d 1, 3 (Iowa 1997). Because this case will be retried, we address the issues of statutory construction that arose.

Iowa Code section 708.7 provides in pertinent part:

1. *a.* A person commits harassment when, with intent to intimidate, annoy, or alarm another person, the person does any of the following:

(1) Communicates with another by telephone, telegraph, or writing without legitimate purpose and in a manner likely to cause the other person annoyance or harm.

(2) Places a simulated explosive or simulated incendiary device in or near a building, vehicle, airplane, railroad engine or railroad car, or boat occupied by another person.

(3) Orders merchandise or services in the name of another, or to be delivered to another, without the other person's knowledge or consent.

(4) Reports or causes to be reported false information to a law enforcement authority implicating another in some criminal activity, knowing that the information is false, or reports the alleged occurrence of a criminal act, knowing the act did not occur.

*b.* A person commits harassment when the person, purposefully and without legitimate purpose, has personal contact with another person, with the intent to threaten, intimidate, or alarm that other person. As used in this section, unless the context otherwise requires, *"personal contact"* means an encounter in which two or more people are in visual or physical proximity to each other. *"Personal contact"* does not require a physical touching or oral communication, although it may include these types of contacts.

2. A person commits harassment in the first degree when the person commits harassment involving a threat to commit a forcible felony, or commits harassment and has previously been convicted of harassment three or more times under this section or any similar statute during the preceding ten years.

Harassment in the first degree is an aggravated misdemeanor.

■ Stephenson suggests a violation of section 708.7(1)(a)(1) requires proof the accused initiated a harassing telephone conversation. He notes that sections 708.7(1)(a)(2)-(4) all proscribe behavior that is instigated by the harasser, and that section 708.7(1)(b) prohibits purposeful, as opposed to accidental contact. This, he believes, evinces a pattern of legislative intent through which the crime of harassment should be construed as a proscription against annoyance inflicted through uninvited, unwelcome contact, rather than an interdiction against nuisance or vulgarity over the phone. Since Stephenson did not place the calls upon which his conviction stands, he reasons the State failed to prove an essential element of the crime.

We are unpersuaded. A well recognized rule of statutory construction holds that "when a statute is plain and its meaning clear, courts are not permitted to search for meaning beyond its express terms." *State v. Chang*, 587 N.W.2d 459, 461 (Iowa 1998).

We find the statute unambiguous. Section 708.7(1)(a)(1) neither expressly or impliedly supports Stephenson's theory. That sections 708.7(1)(a)(2)-(4) specify af-

firmative conduct on behalf of an offender, only serves to buttress the notion that the legislature specifically intended section 708.7(1)(a)(1) to forbid all harassing telephonic communications, regardless of who initiated contact. Had the legislature intended otherwise, it would have employed language of limitation; *i.e.*, providing that only those who "make calls," or "telephone another," commit the crime of harassment.

We also note that the predecessor statute to section 708.7(1)(a)(2) used language on the unlawful use of a telephone that more narrowly applies to an offender. Iowa Code section 714.37 (1975) states:

> It shall be unlawful for any person, with intent to terrify, intimidate, threaten, harass, annoy or offend, *to telephone another* and use any obscene, lewd or profane language or suggest any lewd or lascivious act, or threaten to inflict injury or physical harm to the person or property of any person.

(Emphasis added.)

This statute was amended to provide that the act of harassment is committed by a person who "communicates with another," rather than providing it is unlawful for a person with intent to harass "to telephone another." The present statute was thus broadened to include those instances whereby someone other than the offender initiates the call.

■ We hold that Iowa Code section 708.7(1)(a)(1) applies to a defendant who commits harassment by communication regardless of who initiates the contact between the victim and an accused. The defendant may thereby be prosecuted under Iowa Code section 708.7(2).

IV. Sentencing

■ Although this case will be retried, questions involving sentencing have been raised that we deem important to resolve. Our review of a challenge to a district court's application of a sentencing statute is for corrections of errors at law.

*State v. Edgington*, 601 N.W.2d 31, 32, (Iowa 1999); *State v. Rodgers*, 560 N.W.2d 585, 586 (Iowa 1997). A sentence not authorized by law is void. *State v. Allen*, 601 N.W.2d 689, 690 (Iowa 1999); *State v. Wiese*, 201 N.W.2d 734, 737 (Iowa 1972).

Stephenson was sentenced to an eighteen-month term of imprisonment with the Iowa Department of Corrections, following which time, he was to serve an additional two years probation.

■ The impropriety of this sentence is readily conceded by both parties. Stephenson was convicted of first-degree harassment in violation of Iowa Code section 708.7(2). Harassment in the first degree is an aggravated misdemeanor. Iowa Code § 708.7(2). "When a judgment of a conviction of an aggravated misdemeanor is entered against any person and the court imposes a sentence of confinement for a period of more than one year the term shall be an indeterminate term." *Id.* § 903.1(2). Under the general indeterminate sentencing statute, a judge must impose an indeterminate sentence for the full statutory maximum. *Rodgers*, 560 N.W.2d at 587.

Since section 708.7(2) does not provide a specific penalty for harassment in the first degree, an aggravated misdemeanor, the maximum penalty prescribed by the legislature is imprisonment not to exceed two years. Iowa Code § 903.1(2). The sentence imposed on Stephenson of eighteen months imprisonment is illegal and void.

■ Moreover, probation is to be served in lieu of, not in addition to, incarceration. Probation cannot be ordered in the absence of a suspension of sentence, a deferral of sentence, or a deferral of judgment. *State v. Davis*, 544 N.W.2d 453, 455 (Iowa 1996); *State v. Tensley*, 334 N.W.2d 764 (Iowa 1983); *see also* Iowa Code §§ 901.5, 907.3, 907.5. As Stephenson's probation was not set to begin until after his period of incarceration expired, this portion of the sentence was also improper.

### IV. Conclusion

For the reasons stated, we remand this case for retrial. The court of appeals' decision remanding for a new trial is affirmed. The judgment of the district court is reversed.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED FOR NEW TRIAL.**

All justices concur except LARSON, J., who dissents without opinion, and is joined by McGIVERIN, C.J.