# IN THE COURT OF APPEALS OF IOWA

No. 23-1185
Filed July 24, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**PAUL JOHN JOSEPH KRAMER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Mark T. Hostager

(self-representation) and Robert J. Richter (trial and sentencing), Judges.

        The defendant challenges his conviction and sentence for driving while

barred.  **AFFIRMED AND REMANDED.**

        Francis Hurley, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.

        Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

Paul Kramer challenges his conviction and sentence for driving while barred. Kramer maintains (1) the district court should have ordered a competency hearing sua sponte; (2) the district court should not have allowed him to represent himself in the criminal proceedings; and (3) he should be resentenced because the district court relied on counterfactual reasons, like a guilty plea and the plea agreement, when giving the basis for the sentence imposed.

## I. Background Facts and Proceedings.

The State charged Kramer with driving while barred by trial information. At what was supposed to be his arraignment, Kramer waived his right to counsel, asserting that he wanted to represent himself and telling the court: "They are an officer of the court. There are certain things you and I both know they can't do that I can bring up. Subject matter, in personam jurisdiction, among other things." At that hearing, Kramer loosely espoused sovereign-citizen theories,[1] such as

---

[1] "*Sovereign citizens* are a diverse group of individuals having in common the conviction that no government holds sway over their lives." Martin Blinder, M.D., *Psychiatry in the Everyday Practice of Law* § 8:20 (5th ed. Oct. 2023 update); *see also State v. Rhodes*, No. 11-0812, 2012 WL 5536685, at *3–7 (Iowa Ct. App. Nov. 15, 2012) (rejecting the argument that the defendant's beliefs the court lacked jurisdiction over her concerning the prosecution and as a sovereign citizen she was "a conscientious objector" raised a competency-to-stand-trial issue). Here, although the district court did not characterize Kramer's positions as a sovereign-citizen theory, Kramer stated he was "specially appearing" and that there was no constitutional or statutory basis for the proceeding, citing Iowa Code section 602.6101 (2022), which affords the district court

> exclusive, general, and original jurisdiction of all actions, proceedings, and remedies, civil, criminal, probate, and juvenile, except in cases where exclusive or concurrent jurisdiction is conferred upon some other court, tribunal, or administrative body. The district court has all the power usually possessed and exercised by trial courts of general jurisdiction, and is a court of record.

"[t]here's no constitutional basis" and "no statutory basis under Iowa Code [section] 602.6101" for his prosecution. After additional discussion, including the court's explanation that representing himself would put him "at a disadvantage," the court concluded Kramer was knowingly and voluntarily waiving his right to counsel. Kramer indicated he was not prepared to proceed with the arraignment and needed three weeks, and the court delayed the arraignment for the requested amount of time and appointed standby counsel to assist Kramer.

At his arraignment three weeks later, Kramer moved to dismiss the charge against him, arguing the complaint and affidavit were "legally void." He also argued the court lacked subject matter jurisdiction. The court quoted parts of Iowa Rule of Criminal Procedure 2.8(2), noting that "if the defendant refuses to plead at arraignment, the Court shall enter a not guilty plea." Then the court concluded "[s]o that's what I'm going to technically enter for you today." Following further discussion with the court, Kramer waived his right to speedy trial, stating that he wanted time to conduct discovery.

After several continuances, Kramer agreed to a bench trial on the charge in May 2023. In waiving his right to a jury trial, Kramer told the court, "I would much appreciate you find the findings of fact and conclusions of law, yes." At trial, the State called the police officer who witnessed Kramer driving and ultimately arrested him for the offense. Kramer cross-examined the witness, asking the officer about whether his signature on the complaint was notarized and pointing to specific Iowa Rules of Criminal Procedure he believed required notarization. Kramer also raised arguments regarding procedural due process. He testified in his own defense and introduced sixteen exhibits he prepared for trial. And along

with his presentation of evidence, he argued theories about defects in the prosecution against him. In a written ruling filed after trial, the district court found Kramer guilty of driving while barred.

At sentencing, the district court outlined the procedural history of the case, noting Kramer "had a non-jury trial on May 8 and then there was a verdict returned by this Court on June 25 setting the sentencing hearing for today['s] date." The court imposed a ninety-day jail sentence, stressing that Kramer continued to be convicted of driving while barred and the need to change that behavior. In the written sentencing order filed the same day, the district court stated it "reviewed the signed petition to plead guilty and considered the statements of the Defendant" before accepting the plea. In the section describing the sentencing considerations, the court included "The Plea Agreement" as one of the considerations.

Kramer appeals.

**II. Discussion.**

**A. Competency Hearing.** Kramer argues the district court should have sua sponte ordered a competency hearing. *See* Iowa Code § 812.3. We review de novo. *State v. Einfeldt*, 914 N.W.2d 773, 778 (Iowa 2018). The question is "whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *State v. Mann*, 512 N.W.2d 528, 531 (Iowa 1994) (citation omitted).

Kramer points us to *State v. Lucas*, 323 N.W.2d 228, 232 (Iowa 1982), which provides: "Relevant factors in determining whether due process requires an inquiry as to competency include (1) defendant's irrational behavior, (2) demeanor

at trial, and (3) any prior medical opinion on competence to stand trial." He concedes there is no medical opinion for us to consider but argues that his "irrational behavior and demeanor at trial clearly showed that he was incapable of appreciating the charge against him, understanding the proceedings," or effectively assisting in a defense.

But as the State argues, the facts of this case are similar to those in *State v. Rhodes*, where the defendant espoused sovereign-citizen beliefs to the district court and then, on appeal, argued the court should have held a hearing to determine whether she was competent to stand trial. 2012 WL 5536685, at *3–7.

> When questioned by the court, Rhodes responded coherently, and her testimony does not support the presence of a mental disorder. Rather, Rhodes's testimony, actions, and behaviors demonstrate her unwillingness to accept the fact she was being prosecuted and the fact the court had jurisdiction over her. Her numerous pro se filings show her tenacity in dealing with the situation as she thought appropriate.

*Id.* at *7.

Similarly, at all times throughout the pendency of the case for which we have a record, Kramer responded appropriately to the court's directions and gave coherent responses to questions. At his criminal trial, he presented an orderly— albeit ill-advised—defense, marshalled exhibits, raised a foundational issue, and cross-examined one of the State's two witnesses. "[Kramer's] unconventional beliefs applying or misapplying populist legal theories do not raise a competency issue." *Id.*; *accord State v. Borchers*, No. 22-1454, 2024 WL 467375, at *9 (Iowa Ct. App. Feb. 7, 2024) (concluding there was not a substantial question about the defendant's competency at trial where the defendant "showed a rational—if somewhat misinformed—understanding of the proceedings and the charges

against him. Without the help of counsel, he wrote cogent arguments in his pretrial motion. He had a firm grasp of the facts of his arrest").

The record shows that Kramer had a present ability to understand the charge and the proceedings that followed and was able to present his defense. And so, the district court had no duty to order a competency evaluation sua sponte or otherwise inquire. *See State v. Newman*, 970 N.W.2d 866, 871 (Iowa 2022) (noting there is a presumption that a defendant is competent to stand trial). On our de novo review, we find no legal error in allowing the trial to proceed without having a competency hearing or requiring a competency evaluation.

**B. Self-Representation.** The Sixth Amendment to the United States Constitution guarantees a defendant the right to counsel. *See* U.S. Const. amend. VI; *State v. Rater*, 568 N.W.2d 655, 657–58 (Iowa 1997). The right to counsel includes the right to self-representation. *Rater*, 568 N.W.2d at 658; *see Faretta v. California*, 422 U.S. 806, 819 (1975). Unlike the right to counsel, the right to self-representation is not effective until a defendant asserts it. *Rater*, 568 N.W.2d at 658. And before the right to self-representation attaches, a defendant must knowingly and intelligently waive the right to counsel after the court informs the defendant of the dangers and disadvantages of self-representation. *Id.*; *Faretta*, 422 U.S. at 835. Kramer argues the district court should not have allowed him to represent himself, suggesting his waiver was not knowing and voluntary because of his misinformed beliefs about the law. We review de novo. *Rater*, 568 N.W.2d at 657.

Here, Kramer understood the charge being brought against him and the facts the State intended to establish. He wished to defend against the charge by

raising arguments about the jurisdiction of the court and the authority of the State to sanction him—arguments he recognized a licensed attorney would not be able to make on his behalf. With these facts in mind, as we understand it, Kramer's argument on appeal boils down to an assertion that because of his mistaken personal beliefs about how the law works, he should not have been allowed to represent himself.

But we are unprepared to conclude that a defendant's decision to pursue a defense based on sovereign-citizen theories precludes them from exercising their constitutional right to represent themself. *See, e.g.*, *State v. Franklin*, No. 15-2091, 2017 WL 6516357, at *1 n.2, *3–4 (reversing and remanding for new trial where defendant whose "behavior and assertions . . . align[ed] with the 'sovereign citizen' movement" was not allowed to represent himself). As the Seventh Circuit recently concluded, while

> sovereign-citizen theories . . . reflect misunderstandings about criminal jurisdiction[,] . . . there is no bright line rule barring sovereign citizens from representing themselves. To the contrary, a defendant like [Kramer] can make a clear-eyed, tactical decision to mount a sovereign-citizen defense. Although the defense is almost certain to fail, the Sixth Amendment protects the right of defendants to "go down in flames if they wish[]."

*United States v. Jones*, 65 F.4th 926, 930–31 (7th Cir. 2023) (fourth alteration in original) (internal citations omitted).

Following a colloquy with Kramer, where the court explained his right to counsel and that Kramer would be disadvantaged by representing himself, the district court concluded Kramer's waiver was knowing and voluntary. Nothing Kramer points to on appeal convinces us it was otherwise.

**C. Sentencing.** As a final point, Kramer argues he should be resentenced because, in its written sentencing order, the district court accepted a plea Kramer did not make and stated it was relying on a nonexistent plea agreement as one of the reasons for the sentence imposed. The State concedes the errors in the sentencing order. But it argues that because the court clearly understood the procedure of the case when orally pronouncing sentencing, the mistakes in the sentencing order are clerical in nature and require only a nunc pro tunc order to correct them.

When there is a discrepancy between the oral pronouncement of sentence and the written order, the oral pronouncement controls. *State v. Hess*, 533 N.W.2d 525, 528 (Iowa 1995). And here, it is undisputed that the district court correctly recited the procedural history of the case before orally imposing sentence. The errors on the sentencing order were "clerical in nature"—"not the product of a judicial reasoning and determination." *Id.* at 527. "[W]hen the record unambiguously reflects that a clerical error has occurred, we will direct the district court to enter a nunc pro tunc to correct the judgment entry." *Id.*

Because Kramer has not pointed to any issues with the sentencing hearing and the oral pronouncement of sentence, and because the mistakes in the sentencing order are clerical in nature, we agree with the State. We affirm Kramer's sentence but remand to the district court so that it may issue a nunc pro tunc order to correct the clerical error in the written judgment entry.

**AFFIRMED AND REMANDED.**