# IN THE COURT OF APPEALS OF IOWA

No. 17-1333
Filed October 24, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**KENNETH TENNANT,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Paul L. Macek (trial)
and Marlita A. Greve (sentencing), Judges.

The defendant appeals from his conviction and sentence for tampering with
a juror in violation of Iowa Code section 720.4 (2017).  **AFFIRMED.**

Lauren M. Phelps, Davenport, for appellant.

Kenneth Tennant, Bettendorf, pro se appellant.

Thomas J. Miller, Attorney General, and Timothy Hau, Assistant Attorney
General, for appellee.

Considered by Danilson, C.J., Tabor, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**Per Curiam.**

Defendant Kenneth Tennant appeals his conviction and sentence for tampering with a juror in violation of Iowa Code section 720.4 (2017). On appeal, Tennant raises eight issues, including five concerning jury instructions, arising from the jury trial where Tennant represented himself.[1] Based upon our review, we affirm.

I.      Factual Background.

This case had its beginnings in an earlier criminal case involving Tennant's son. On March 7, 2017, Tennant's son was found guilty of criminal charges by a jury. T.F. was foreman of that jury. Tennant disagreed with his son's verdict. Later on March 7, Tennant emailed T.F. raising questions about how the jury could reach the verdict it did. T.F. forwarded Tennant's email to the trial judge in the son's case asking for guidance; T.F. did not reply to Tennant.

On March 8, Tennant sent a more strongly worded email to a number of people, including employees of the local television stations, the Alliance Defending Freedom, and someone at the United States Department of Justice. He was openly critical of the justice system, the courts, the attorneys, the judges, and the jury in his son's trial. He copied T.F. on this email. On March 10, he sent by email a "motion to arrest verdict" to the judge who presided over his son's trial; the email was also received by T.F.

---

[1] Tennant has also filed a pro se appellate brief and a pro se reply brief. Except for the sentencing issue, we do not decide any of the other issues he raises, as he makes no cognizable claim that has been preserved for our review or supported by the record before us.

On March 12, Tennant sent an email to a long list of people, including T.F., and copied a number of other people on the email. On March 13, Tennant sent another email of a similar nature to more than ten people, including T.F., requesting an internal investigation of the officers involved in the arrest of his son, which was the basis of the son's trial.

Finally, on March 17, Tennant sent by certified mail a packet and letter—marked confidential—to the human resources (HR) department of T.F.'s employer. The letter stated T.F. had convicted an innocent citizen and his competency and integrity should be questioned. Included in the packet was a photo of T.F. that Tennant obtained from the internet. When T.F. was informed by his employer's HR manager of this packet from Tennant, he notified the judge who presided over the trial where T.F. had served as jury foreman. A criminal investigation followed, and a criminal complaint was filed against Tennant for harassment of T.F. in connection with his service as a juror in the son's criminal trial.

II.     Procedural Background.

On March 27, 2017, Tennant was charged by criminal complaint with one count of tampering with a juror in violation of Iowa Code section 720.4. At his initial appearance, Tennant refused to complete an application for court-appointed counsel. A trial information was filed April 5, charging him with the same crime. Tennant pled not guilty at arraignment and proceeded self-represented. He filed a number of pro se motions and documents, which were heard on May 18. At the hearing, the court again inquired if Tennant would like to fill out a financial affidavit and be considered for a court-appointed attorney. Tennant declined, claiming court-appointed counsel is a "farce." In a ruling filed on June 15, the court denied

Tennant's numerous motions and again referenced Tennant's right to apply for court-appointed counsel or hire his own attorney.

A jury trial commenced on June 26. Tennant represented himself throughout the trial. The State called several witnesses, including T.F., and presented the emails and the contents of the package sent to T.F.'s employer. Tennant called no witnesses and did not testify; however, he made an opening statement and closing argument, and he cross-examined the State's witnesses. The State admitted into evidence a YouTube video showing Tennant discussing the events surrounding his son's trial and Tennant's own arrest. Tennant attempted to offer a second video, but he was unsuccessful in laying foundation and having it admitted. At the close of the State's case, at the court's request, Tennant made a series of statements that the court interpreted as a motion for judgment of acquittal, which was denied.

The jury found Tennant guilty, and he was sentenced to two years in prison, with prison being suspended and probation granted, a fine of $625 plus costs, and surcharge. Tennant appeals his conviction.

III. Discussion.

A. Whether the court erred in failing to grant Tennant's motion for mistrial.

Tennant claims that the trial court erred in failing to grant his motion for a mistrial. Initially, the State contends Tennant did not preserve error on this issue. A mistrial motion must be made at the earliest opportunity in the progress of the case. *See State v. Milner*, 571 N.W.2d 7, 12 (Iowa 1997). On our review of the record, Tennant made his request for mistrial at the earliest opportunity after the judge admonished Tennant and pointed his finger. The court immediately took a

recess and addressed the situation, but it did not rule on the mistrial motion. The judge impliedly overruled the motion since the trial proceeded. We find the issue was preserved for our review.

Generally, we review the denial of motion for mistrial for abuse of discretion. *State v. Piper*, 663 N.W.2d 894, 901 (Iowa 2003), *overruled on other grounds by State v Hanes*, 790 N.W.2d 545, 551 (Iowa 2010). As noted, in this case Tennant represented himself. A review of the record reveals the extent to which he continually tested the patience of the court. The court exhibited an admirable degree of restraint. Earlier during the trial, the court warned Tennant to comply with the court's rulings and that his failure to do so was approaching contempt.[2] The event giving rise to Tennant's mistrial motion involved Tennant cutting off the witness from answering a question. The court intervened and the following exchange occurred:

> THE COURT: Excuse me. You have to wait until the witness answers his question. I understand you're getting answers you don't like to hear, but because you don't like to hear them—
> TENNANT: I'm sorry, I'm objecting to it—
> THE COURT: —doesn't mean you get an opportunity to interrupt, like you're doing to me.
> TENNANT: I object to that, and I think it's rude that you're pointing your finger at me, and I think it's accusatory and inflammatory, and I think what you're doing to the jury here is prejudicing them.
> THE COURT: Dr. Tennant—

---

[2] During the conference before jury selection, the following occurred:
> THE COURT: Do you understand that at a trial you will have to conduct yourself with dignity and respect, as is expected of any attorney in the courtroom? Now, let me emphasize that. When we're in front of that jury, you have to conduct yourself in a courteous and respectful fashion, not only to the jury, but to Mr. Cusack and the Court. And I don't want to tinge this with a threat, but—
> TENNANT: But it's—but it's—you know—
> THE COURT: But Dr. Tennant, if you're not courteous, I'll address it.

TENNANT: I don't need this. I'm not a lawyer, and you know I'm not a lawyer, and for you to point your finger at me in front of the jury, you have prejudiced this jury.

THE COURT: Dr. Tennant—

TENNANT: I call for mistrial.

THE COURT: Dr. Tennant—

TENNANT: This is ridiculous. You don't need to sit there and chastise me like that.

THE COURT: Ladies and gentlemen, we're going to take a recess. Remember the admonition.

(The jury recessed.)

THE COURT: Dr. Tennant—let the record reflect that we are outside the presence of the jury, in open court. The defendant is present, as is the State by counsel. Dr. Tennant, you have constantly interrupted me.

MR. TENNANT: I apologize.

A trial judge has considerable discretion to declare a mistrial, and we will not reverse that decision absent a showing "that the trial court's discretion was exercised on grounds clearly untenable or clearly unreasonable." *Id.*

A trial judge must "preserve an attitude of impartiality [and guard] against giving the jury the impression that the court believes the defendant is guilty." Therefore, it is clear that when a trial judge makes prejudicial remarks about the defendant in front of the jury, the judge may order a mistrial.

*State v. Brooks*, No. 07-1057, 2008 WL 509068, at *5 (Iowa Ct. App. Feb. 27, 2008) (alteration in original) (citation omitted) (noting the judge declared mistrial and acknowledged he did not act appropriately in dealing with pro se defendant).

This was not the first time that Tennant had to be advised by the court to let the witness finish answering the question. Tennant argues that the entire transcript is replete with comments by the court that clearly expressed irritation, impatience, and a disturbing lack of neutrality by the court. We disagree. Upon our review of the entire record, we find the trial court exercised extreme patience with Tennant, who showed little respect for the court, frequently criticized the judges and the

judicial system, and ignored the court's rulings and admonitions.  The fact that the court emphasized by pointing his finger at Tennant on this one occasion was neither inflammatory, nor did it give the impression in front of the jury that Tennant was guilty, so as to merit a mistrial.  Tennant understood the error of his ways as he apologized to the court once outside the presence of the jury.  The events here do not approach a situation like that in *Brooks.*  The trial court was well within its discretion to deny the motion for mistrial.

> B. Whether the court erred in refusing to play a video that Tennant did not have admitted into evidence?

A district court's evidentiary rulings are reviewed for an abuse of discretion.  *State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013).  Tennant contends the trial court abused its discretion in refusing to play a portion of an exhibit admitted into evidence by the State, a YouTube video downloaded onto a DVD by Detective Ells showing Tennant discussing his son's trial and conviction as well as his own charge, arrest, detention, and posting bond.

The State asserts that Tennant failed to preserve this issue for appeal.  During the State's questioning of Detective Ells to lay foundation for the admission of the DVD,[3] the detective was asked: "When did you record that, if you recall?"  Ells answered: "I don't have the date on there. This is—would have been just recently, because this is part 2 of part 1."  After laying more foundation, the prosecutor offered the exhibit, and Tennant responded, "Could we see it in its entirety, please?"  The prosecutor stated he "could do that," and then the exhibit was admitted and played for the jury.

---

[3] State's Exhibit No. 11.

Tennant frames the issue as the court erring in refusing to play a portion of the video that he requested. Our review of the exhibit discloses that it contains only "part 2," a thirteen minute YouTube video made by Tennant. According to the record, the prosecutor complied with the request—the entirety of the DVD admitted into evidence was played to the jury. However, Tennant argues the court erred in refusing to play "part 1" of a YouTube video, which was not in evidence. If there was a part 1 of a YouTube video that Tennant wanted the jury to see, he had the obligation to lay foundation and have it entered into evidence. Tennant failed to do so. The court did not abuse its discretion in denying his request to display a video that was not in evidence.

C. Whether the court erred in denying Tennant's motion for judgment of acquittal?

At the close of the State's evidence, the trial court invited Tennant to make his motion for judgment of acquittal. *See* Iowa R. Crim. P. 2.19(8). Tennant made one motion that was clear—that the trial judge recuse himself due to having, in Tennant's words, "a conflict of interest." The court denied that motion. Tennant made a lengthy statement that included derogatory remarks about the presiding judge. The trial court stated the following in "ruling" on the motion for judgment of acquittal: "Everything else that you've said, I'm treating as a motion for a directed verdict of acquittal. In taking the evidence in the light most favorable to the State, which is the Court's obligation at this point in time, the motion is denied." In response to this ruling, Tennant responded agitatedly:

> Well, I object to, you know, the most favorable to the State. Why is that? Because you're conflicted. You work for the State. You ought to be ashamed of yourself, really. Sitting up there in a black robe like some warlock, speaking of codes and motions.

. . . .

. . . I don't know that I—I don't think that I made any motions.

THE COURT: Oh, then I misinterpreted. I thought you were making a motion for a directed verdict of acquittal.

TENNANT: I think you misinterpreted the purpose of a—when I asked for a common-law court, that was misinterpreted, too, because instead I got a administrative law judge that is here to only enrich himself.

THE COURT: Very well. The—I take it from what you've just said that you do not now want to make a motion, because you're concerned that it would then subject you to the jurisdiction of the court, something like that? In any event—

TENNANT: Do—let me ask you, do I—do I—do I—do you think I had the right to a fair hearing?

THE COURT: Any motions, to the effect that you've made one, are denied. That's for the record.

Tennant on appeal asserts he made an adequate motion to challenge the sufficiency of the evidence. The State contends Tennant failed to preserve error as his motion for judgment of acquittal did not state specific grounds attacking the sufficiency of the evidence. When a motion for judgment of acquittal does not make reference to the specific elements of the crime on which the evidence was claimed to be insufficient, it does not preserve the sufficiency-of-the-evidence issue for review. *See State v. Crone,* 545 N.W.2d 267, 270 (Iowa 1996) (citing *State v. Geier*, 484 N.W.2d 167, 170-71 (Iowa 1992)). Tennant contends that his motion was properly preserved as "the record indicates that the grounds for a motion were obvious and understood by the trial court and counsel." *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005).

Upon our review of the record, we agree with the State—Tennant's statements did not set forth specific grounds to be a sufficient motion for judgment of acquittal. In fact, he denied making such a motion. It is also clear the court issued a ruling out of an abundance of caution, denying said motion "to the extent

[Tennant] made one." The record also does not support Tennant's contention that "grounds" for his motion were understood by the trial court and counsel. Thus, there is no basis for us to review on appeal Tennant's motion for judgment of acquittal.

  D. Whether the court erred in overruling Tennant's objections to jury instructions.[4]

  Challenges to jury instructions are reviewed for correction of errors at law. *Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 891–92 (Iowa 2015). "Instructional errors do not merit reversal unless prejudice results. Prejudice occurs and reversal is required if jury instructions have misled the jury, or if the district court materially misstates the law." *Id.* (citations omitted). We generally review a district court's refusal to give a requested jury instruction for errors at law; however, if the jury instruction is not required but discretionary, we review for an abuse of discretion. *Alcala v. Marriott Int'l, Inc.* 880 N.W.2d 699, 707 (Iowa 2016). With these legal principles in mind, we review Tennant's challenges to the following jury instructions.

  1. Statement of the case. The statement of the case given by the trial court stated:

> The trial information in this case charges, the defendant, Kenneth C. Tennant, with count I, tampering with a juror, alleging that on or about March 20, 2017, in Scott County, Iowa, the defendant did tamper with a juror by harassment in retaliation for lawful actions taken by the jury, in violation of section 720.4 of the Code of Iowa.

---

[4] We note Tennant raised objections to additional instructions at trial, which we do not address here. We address only the instructions Tennant argues in his appeal brief. See *State v. Short*, 851 N.W.2d 464, 479 (Iowa 2014) (reiterating that under Iowa Rule of Appellate Procedure 6.903(g)(3), issues not raised and argued in appeal brief are deemed waived).

Tennant contends the statement's inclusion of the phrase, "defendant did tamper with a juror," was error because the wording implies guilt and "makes it sound as if this is a fact." As the State points out, this language mirrors the wording of the trial information, which sets forth the charge and includes the word "alleging." Also, the court instructed the jury in instruction No. 3 that: "The trial information is the document that formally charges the defendant with a crime and is merely the method by which the defendant is brought into court for trial. It is not evidence." It is well-settled that a trial court need not instruct in a particular way so long as the subject of the applicable law is correctly covered when all the instructions are read together. *State v. Monk*, 514 N.W.2d 448, 450 (Iowa 1994). We find that the statement of the case was proper, the court correctly denied Tennant's objection, and the court did not err in giving it.

2. Instruction No. 4. This instruction to the jury begins, "You shall base your verdict only upon the evidence and these instructions," and then goes on to set out what is and is not evidence. This is a recognized uniform criminal jury instruction. *See* Iowa State Bar Ass'n, Iowa Crim. Jury Instructions No. 100.5. The court is slow to disapprove of uniform jury instructions. *State v. Weaver*, 405 N.W.2d 852, 855 (Iowa 1987).

Tennant objected: "Yeah, I have an objection, because it says that they weren't—they're [the jury] not allowed to look at some of the evidence that was withheld." At the time of the objection Tennant did not specify to what evidence he was referring. On appeal, he now claims the "withheld" evidence referred to the YouTube video that was not admitted into evidence.

Here, Tennant objected to the instruction because it did not allow the jury to consider non-evidence, the YouTube video that was not admitted. A jury instruction that called for the jury to consider non-evidence would be an incorrect statement of the law and not permitted. *See State v. Beets*, 528 N.W.2d 521, 523 (Iowa 1995) ("[T]he instruction must be a correct statement of the law."). It would have been error if the court had given the instruction as requested by Tennant. The court did not err in overruling Tennant's objection to instruction No. 4.

3. Instruction No. 9.[5] This instruction advised the jury, "Nothing I [the judge] have said or done during the trial was intended to give any opinion as to the facts, proof, or what your verdict should be." When objecting, Tennant stated: "Obviously there's an objection there, because, and I've—and I've pretty much stated what I had to say with regard to that." The court responded, "Very well." Tennant was not specific as to the basis of his objection, and the court did not specifically rule on the objection.

In his appeal brief, Tennant acknowledges that his objection "was not specifically stated during the jury instruction discussion." The law is clear regarding objections to instructions to preserve error.

> "The rules relating to the instruction of juries in civil cases shall apply to the trial of criminal cases." "Even a timely objection to jury instructions will not avoid waiver of error if the objection is not sufficiently specific." "The objection must be 'sufficiently specific to alert the trial court to the basis of the complaint so that if error does exist the court may correct it before placing the case in the hands of the jury.'"

---

[5] In the record, this instruction was referred to as No. 8, but the language read into the record is Instruction No. 9.

*State v. Foley*, No. 17-0043, 2017 WL 4317328, at *2 (Iowa Ct. App. Sept. 17, 2017) (citations omitted).[6]  Tennant failed to preserve error as to this jury instruction.

> 4.  Instruction No. 12.  In this instruction the court instructed the jury:

> To commit a crime a person must intend to do an act which is against the law.  While it is not necessary that a person knows the act is against the law, it is necessary that the person was aware he was doing the act and he did it voluntarily, not by mistake or accident.  You may, but are not required to, conclude a person intends the natural results of his acts.

This is the general-intent uniform criminal jury instruction.  *See* Iowa State Bar Ass'n, Iowa Crim. Jury Instruction No. 200.1.  Tennant's objection to this instruction was that it should be "an instruction that signifies to the jury that it was my intention, I intentionally knew I was violating a law."  The court overruled the objection.

The pertinent provisions of the statute defining the crime charged state, "A person who . . . in retaliation for anything lawfully done by any . . . juror in any case, harasses such . . . juror, commits an aggravated misdemeanor."  Iowa Code § 720.4.  The supreme court has held that the term "harasses," as used in this statute, means "harassment," as defined in Iowa Code section 708.7(1).  *State v. Reynolds,* 670 N.W.2d 405, 410 (Iowa 2003).  The pertinent portion of section 708.7(1)(a)(1) defines harassment, "A person commits harassment when, *with intent to intimidate, annoy, or alarm another person,* the person . . . [c]ommunicates with another by telephone, telegraph, writing, or via electronic communication

---

[6] Usually, in a criminal case, a defendant could claim ineffective assistance of counsel when his attorney fails to make an adequate objection to an instruction.  However, here, Tennant was self-represented and does not have an ineffective-assistance claim.

*without legitimate purpose,* and in a manner likely to cause the other person annoyance or harm." (Emphasis added.)

> Thus, the crime of tampering with a juror is a specific form of harassment: in this case, . . . communication with a juror in retaliation for anything lawfully done by the juror in a case *with intent to intimidate, annoy, or alarm the juror and in a manner likely to cause the juror annoyance or harm.*

*State v. Baker*, 688 N.W.2d 250, 253 (Iowa 2004) (emphasis added). Based upon this analysis, section 720.4 has been held to be a specific intent crime. *See State v. Van Wyk*, No. 01-1262, 2002 WL 1585831, at *4 (Iowa Ct. App. July 19, 2002) (considering whether there was sufficient evidence of defendant's specific intent to intimidate, alarm, or annoy the complaining winess in retaliation for the guilty verdict).

If the court had only given the jury the general-intent instruction, that would have been error. But the court also instructed the jury on specific intent in instruction No. 15[7] and defined the term "harassment" in instruction No. 14 as quoted above. Tennant's objection to instruction no. 12 regarding intent was "cured" by the court also giving the specific intent and harassment instructions since, as stated above, all of the instructions are to be read together.

The only charge submitted to the jury was the tampering with a juror, a specific-intent crime. The general-intent instruction was not necessary, but to justify reversal the error must also be prejudicial. *See State v. Plain*, 898 N.W.2d 801, 817 (Iowa 2017) ("'Error in giving . . . a jury instruction does not warrant reversal unless it results in prejudice to the complainting party.'" (citation omitted)).

---

[7] The specific-intent instruction was the Iowa Criminal Jury Instruction No. 200.2.

Based upon the following, we find giving the general-intent instruction was not prejudicial. The error is presumed prejudicial unless, from a review of the entire case, the contrary appears beyond a reasonable doubt. *State v. Engle*, 590 N.W.2d 549, 551 (Iowa Ct. App. 1998). We do not view the erroneous instruction in isolation but look to the jury instructions as a whole. *State v. Fintel*, 689 N.W.2d 95, 104 (Iowa 2004). When the court's instructions confuse or mislead the jury, prejudice results. *State v. Ambrose*, 861 N.W.2d 550, 562 (Iowa 2015) (citing *Anderson v. Webster City Cmty. Sch. Dist.* 620 N.W.2d 263, 268 (Iowa 2000)).

In *State v. Hague*, the court found that giving the jury the general- and specific- intent instructions, without clarification, was error. No. 04-1024, 2005 WL 2989705, at *7 (Iowa Ct. App. Nov. 9, 2005). In the present case, however, the court gave the additional instruction defining harassment as used in the marshalling instruction. The jury was instructed to apply the specific-intent instruction along with the harassment instruction in addressing the marshalling instruction to determine whether Tennant was guilty or not. *See State v. Keeton,* 710 N.W.2d 531, 534 (Iowa 2006) (acknowledging regardless of the specific label attached—specific intent or general intent—the State must prove the elements of the crime and their accompanying mens rea beyond a reasonable doubt); *State v. Wessels*, No. 15-1023, 2016 WL 4543719, at *2 (Iowa Ct. App. Aug. 31, 2016); *State v. Hall,* No. 11–1524, 2012 WL 4900426, at *6 (Iowa Ct. App. Oct. 17, 2012) (noting "the instructional error was of little consequence here because the court included the language of the assault statute in the marshalling instruction").

The elements of tampering with a juror were correctly set out by the court in the marshalling instruction, No. 13:

> The State must prove all of the following elements of Tampering with a Juror:
> 1. The defendant harassed [T.F.], as explained in Instruction No. 14.
> 2. [T.F.] had acted lawfully in the performance of his duty as a juror.
> 3. The harassment was done in retaliation for a lawful act by the juror.

The first element required the jury to find Tennant harassed T.F. As already noted, harassment was defined in instruction No. 14: "A person commits harassment when, *with intent* to intimidate, annoy, or alarm another person . . . ." (Emphasis added). The specific-intent instruction advised the jury: "'Specific intent' means not only being aware of doing an act and doing it voluntarily, but in addition, *doing it with a specific purpose in mind.*" (Emphasis added). These instructions together not only satisfied Tennant's stated objection, but they also resolve any claim of prejudice. We encourage trial courts not to give both the general- and specific-intent instructions unless instructing the jury on separate crimes that involve general and specific intent. And even then, the court should make clarify to the jury which form of intent applies to which particular crime. In this case, Tennant has not established prejudice from the court giving both the general- and specific-intent instructions.

Tennant further objected that instruction No. 12 was incorrectly located in the set of instructions and should have been located in sequence next to the specific-intent instruction, No. 15. Generally, the order in which the instructions are given by the court does not matter. *See Graber v. City of Ankeny*, 616 N.W.2d 633, 642 (Iowa 2000) ("'A party is not entitled to any particular form of instruction, but merely to instructions which fairly state the law as applied to the facts.'" (citation

omitted)). In instruction No. 8, the court advised the jury: "You must consider all of the instructions together. No one instruction includes all of the applicable law." The court was not obligated to give the instructions in the order requested by Tennant and did not err in overruling Tennant's objection.

5.      Instruction No. 13. Tennant objected to the marshalling instruction set out above, complaining he felt it was making a statement that was false and directing a guilty verdict. Tennant's reading of the instruction is incorrect, as it correctly set forth the elements that the State had to prove to establish guilt of the crime provided in Iowa Code section 720.4. Since it was a correct statement of the law, the court correctly overruled the objection.

Having addressed all of Tennant's objections to jury instructions and finding the court did not commit prejudicial error in overruling those objections, they provide no basis to reverse the jury's verdict.

E.  Whether Iowa Code section 720.4 is unconstitutional and void for vagueness as applied?

On appeal Tennant raises the claim that the code section under which he was convicted is unconstitutional and void for vagueness. In support of his claim this issue was raised before the district court and thus preserved for appeal, he cites this court to two specific pages in the trial transcript. This record was between the direct and cross-examination of one of the State's witnesses. On those pages Tennant made two references, one to "constitution" and another to "unconstitutional code."[8] The court did not rule in response to these comments or

---

[8] Tennant stated:

> Once the jury is informed, a party to the action may not be prohibited from presenting arguments pertaining to issues of law and conscience,

at any time during the trial on Tennant's other comments mentioning a constitution.[9] Although Tennant filed several pretrial motions to dismiss raising generic claims of due process violations, none of them challenged Iowa Code section 720.4 on void-for-vagueness grounds.

Tennant acknowledges in his brief that a claim that a statute is unconstitutional must be raised at the earliest opportunity, citing *State v. Mann*, 602 N.W.2d 785 (Iowa, 1999). It is his position the two references he made in the record properly raised the constitutional issue. We cannot agree. The supreme court has stated:

> We have held that a pretrial motion under [Iowa Rule of Criminal Procedure 2.11(2)] is the proper vehicle to use when challenging the constitutionality of a statute, and that such a challenge must be raised "at the earliest opportunity in the progress of the case." The purpose of such an error-preservation rule is to give notice to the court and opposing counsel at a time when corrective action is still possible.

*State v. Milner*, 571 N.W.2d 7, 12 (Iowa 1997) (citations omitted).

Tennant's comments were not in the form of a motion challenging Iowa Code section 720.4 as void for vagueness. Simply stating words "constitution" and "unconstitutional code" did not put the court or opposing counsel on notice of his particular challenge. Further, even if this constituted a proper challenge, it was made near the end of the State's case in chief—not by pre-trial motion—and was clearly untimely. A review of the entire record discloses that throughout the proceedings Tennant made reference to the prosecution being unconstitutional,

---

including merit, intent, constitutionality, or applicability of the law. . . . It makes no sense that a common-law person would be subject to an obscure, unconstitutional code.

[9] Tennant did not specify to which constitution he was referring.

although he was not specific.[10] *See State v. Van Wyk*, No. 01-1262, 2002 WL 1585831, at *4 (Iowa Ct. App. July 19, 2002) (finding error was not preserved on First Amendment challenge to Iowa Code section 720.4 because "[a] failure to make the challenge in a timely manner leaves nothing for the appellate court to review").[11]

    F.  Whether Iowa Code section 720.4, under which Tennant was convicted, violates Tennant's First Amendment rights?

Tennant's second constitutional challenge is that section 720.4 violates his First Amendment rights related to freedom of speech. This identical claim has been previously addressed and rejected by the Iowa Supreme Court.

> Under section 720.4, the criminality of one's conduct turns on whether the defendant acts (1) without legitimate purpose, (2) with an intent to intimidate, annoy, or alarm the juror, and (3) in retaliation for the juror's performance of his or her civic duty as a juror on a case. Such conduct, even when it includes speech, is not protected by the First Amendment. Harassment is not communication, although it may take the form of speech.

*Baker*, 688 N.W.2d at 253–54 (citations and footnote omitted); *see also State v. Scheckel*, No. 15-1680, 2017 WL 706205, at *4 (Iowa Ct. App. Feb. 22, 2017) (finding no lawful purpose for the defendant's communication existed, thus taking it outside First Amendment protection). As stated above, we must follow and are not at liberty to reverse supreme court precedent, not that we should or would in

---

[10] Tennant referenced the First Amendment and "freedom of speech" six times during the trial.

[11] Even if we assume Tennant's constitutional challenge to section 720.4 was preserved, our de novo review need only be very brief. The Iowa Supreme Court has previously rejected a similar constitutional challenge to section 720.4. *See Baker*, 688 N.W.2d at 256. We are obligated to follow supreme court precedent. *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent.").

this case. Iowa Code section 720.4 does not violate Tennant's First Amendment freedom-of-speech rights.

G. Whether the court erred in failing to appoint Tennant standby counsel?

Tennant now claims the trial court erred in not appointing a standby counsel to assist him at trial. When a defendant is alleging that his Sixth Amendment right to counsel or self-representation was denied, the reviewing court considers the matter de novo. *See State v. Rater*, 568 N.W.2d 655, 657 (Iowa 1997). The court is to independently evaluate the defendant's claim under the totality of the circumstances as shown by the entire record. *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004).

The Sixth Amendment "does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Faretta v. California*, 422 U.S. 806, 819 (1975). "In a state criminal trial, a defendant has a Sixth and Fourteenth Amendment right under the United States Constitution to self-representation." *Rater*, 568 N.W.2d at 658. However, the right of self-representation is not in effect until it is asserted. *Id.* To do so, the defendant "must voluntarily elect to proceed without counsel by 'knowingly and intelligently' waiving his Sixth Amendment right to counsel." *Id.* (citing *Faretta*, 422 U.S. at 835). The request must be unequivocal. *Id.* Once a defendant elects to represent themself, he or she has certain rights within that self-representation:

> In *McKaskle v. Wiggins*, 465 U.S. 168(1984), the Supreme Court delineated the rights that are to be afforded a pro se defendant in order to ensure that the Sixth Amendment rights outlined in *Faretta* are upheld. In *McKaskle*, the Court held that a court may appoint "stand-by counsel" over a defendant's objection. *McKaskle*, 465 U.S. at 179. In so ruling, the Court outlined two general limitations upon stand-by counsel's unsolicited participation at trial. *Id.* at 178–

79. First, the pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury. *Id.* at 178. Second, participation by stand-by counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself. *Id.* at 179. Essentially, stand-by counsel has two purposes—to act as a safety net to ensure that the litigant receives a fair hearing of his claims and to allow the trial to proceed without the undue delays likely to arise when a layman presents his own case.

*Id.* (parallel citations omitted).

When a defendant elects to exercise their Sixth Amendment right to present their own case, the court may appoint standby counsel, but such appointment is not mandatory: "Although advisory counsel is recommended when a defendant elects to proceed pro se, provision of standby counsel is not constitutionally required." *State v. Hutchinson*, 341 N.W.2d 33, 41 (Iowa 1983). This holding was reaffirmed in *State v. Johnson*, 756 N.W.2d 682, 687 (Iowa 2008), when our supreme court acknowledged, "Although '[p]articipation by counsel with a pro se defendant's approval is . . . constitutionally unobjectionable,' the trial court is not constitutionally required to appoint standby counsel." (Alteration in original.)

Based on this case law, the court must balance a defendant's right to counsel with the right to self-representation. Tennant does not assert in his appeal that he was entitled to court-appointed counsel. He limits his argument to standby counsel. A review of the trial transcript discloses that the trial court conducted a lengthy colloquy with Tennant regarding court-appointed counsel and standby counsel, which spans thirty-eight pages. The colloquy complied with the requirement that it determine Tennant knowingly, intelligently, voluntarily, and unequivocally waived his right to counsel.

Tennant claims that the court initially appointed standby counsel but then withdrew that appointment due to irritation with him. This is not supported by the record.

Since the court complied with the requirements regarding court-appointed counsel, which Tennant waived and does not challenge on appeal, and standby counsel is not constitutionally mandated and was not requested by Tennant, we find the court did not err in not appointing standby counsel.

H. Disparate sentence.

In his pro se brief, Tennant raises one potentially identifiable issue: that the sentence imposed was disparate. Tennant fails to cite any legal authority to support his argument. *See* Iowa R. App. P. 6.903(2)(g)(3) (requiring appellant to present arguments and supportive authority in appeal brief and stating "[f]ailure to cite authority in support of an issue may be deemed waiver of that issue"); *Short*, 851 N.W.2d at 479. Other than stating that his sentence it was, Tennant does not identify how it was disparate. He only attempts to make a comparison of his sentence with another defendant convicted of an aggravated misdemeanor—but not the same crime as his. Tennant has not provided us with a record upon which we can determine whether the sentence he received was disparate.[12]

Moreover, the sentence imposed was within the parameters afforded to the court under Iowa Code section 903.1(2) for aggravated misdemeanors. District courts are granted considerable discretion in sentencing. *See State v. Thomas*, 547 N.W.2d 223, 225 (Iowa 1996) ("Sentencing decisions of the district court are

---

[12] Tennant's statement in his pro se brief as to the sentence imposed on the other defendant for comparison to support his disparate claim is not in the record.

cloaked with a strong presumption in their favor. Where, as here, a defendant does not assert that the imposed sentence is outside the statutory limits, the sentence will be set aside only for an abuse of discretion."). We find no abuse of discretion based upon what is before us.

IV.     Conclusion.

After our review of the record in this appeal, we find Tennant's appeal on each issue either has not been preserved or has no merit. The conviction and judgment are affirmed.

**AFFIRMED.**