# IN THE COURT OF APPEALS OF IOWA

No. 18-0777
Filed June 5, 2019

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**LEIGH LAZ LEPON,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Story County, Timothy J. Finn, Judge.

The defendant appeals the dismissal of his untimely third motion for new trial; we treat it as a petition for writ of certiorari. **WRIT ANNULED.**

Leigh Laz LePon, Fort Madison, pro se appellant.

Thomas J. Miller, Attorney General, and Benjamin Parrott, Assistant Attorney General, for appellee.

Considered by Vogel, C.J., Vaitheswaran, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BLANE, Senior Judge.**

Leigh LePon appeals the district court dismissal of his third motion for new trial, filed more than two years after judgment and sentence were imposed on his conviction for second-degree murder. In this appeal, LePon raises a number of claims as to why the district court erred in dismissing his motion, mostly procedural complaints, and why we should exercise jurisdiction in this appeal. For the reasons discussed below, we treat LePon's notice of appeal as a petition for writ of certiorari, grant the petition, address the issues raised under the appropriate legal standards, find the trial court did not act illegally, and annul the writ.

I. Factual and procedural background.

The State charged LePon with first-degree murder for shooting Devlin Lockman. LePon pleaded not guilty. On November 17, 2015, a jury found LePon guilty of second-degree murder. LePon filed a motion for judgment of acquittal and his first motion for new trial, which were denied. On January 4, 2016, the district court entered judgment and sentenced LePon.

On January 14, 2016, LePon appealed his conviction, raising eight issues through counsel as well as pro se. Our court affirmed his conviction. *See State v. LePon*, No. 16-0117, 2017 WL 4049829, at *1 (Iowa Ct. App. Sept. 13, 2017). LePon then filed an application for further review with the Iowa Supreme Court. On November 20, 2017, while his application for further review was pending, LePon pro se filed a second motion for new trial in the district court. The motion cited Iowa Rule of Civil Procedure 2.24 and referenced newly-discovered evidence.

On November 21, the district court entered an order that it could not rule on this second motion for new trial because it lacked jurisdiction over the case as the application for further review was pending and jurisdiction was with the appellate court. On December 4, LePon filed a motion to reconsider or enlarge the order denying his second motion for new trial. On that same date, the district court entered an order denying this motion for the same reason it had denied the motion for new trial.

On December 11, LePon then petitioned the Iowa Supreme Court for certiorari review of the district court's denial of his second motion for new trial. On January 5, 2018, by order of one justice, LePon's petition for certiorari was denied. On January 16, LePon requested review of his certiorari petition by a three-justice panel.

On January 17, the Iowa Supreme Court declined further review of the Iowa Court of Appeals' opinion affirming LePon's conviction. Procedendo issued January 17, 2018.

On January 26, a three-justice panel confirmed the denial of LePon's certiorari petition as to his second motion for new trial.

On February 9, LePon pro se filed a third motion for new trial, again citing Iowa Rule of Criminal Procedure 2.24 and mentioning newly-discovered evidence. Since the earlier appealed issues had all been resolved, the district court had resumed jurisdiction and set the motion for a hearing on February 26, 2018. LePon filed two motions for transport (the first through a "next friend"), each requesting an order to transport LePon from prison so he could personally appear at the hearing. The district court denied the first motion as the "next friend" lacked

standing and implicitly denied the second motion by holding the hearing with LePon participating by telephone. The State did not file a written resistance to the motion for new trial but orally resisted at the hearing.

During the hearing, LePon asserted a constitutional right to be personally present, made an oral motion for the judge to recuse himself, and asked for an ex parte hearing in support of his motion for appointment of an investigator. LePon reasserted these oral requests in his post-hearing brief. He did not disclose the nature of his claimed new evidence.

On March 16, the district court filed a written order that dismissed LePon's third motion for new trial as untimely having been filed more than two years after "final judgment of sentence" and no good cause existing to ignore the deadline. The court also denied LePon's motion to recuse.

On March 28, LePon filed a motion to reconsider or enlarge. LePon moved the court to address his right to be present at the hearing, to decide whether he had notice and an opportunity to be heard on the issue of the timeliness of the motion for new trial, to find good cause existed to excuse the two-year deadline, and again for the judge to recuse himself. By order on April 23, the district court denied the motion to reconsider or enlarge.

On May 3, LePon filed his pro se notice of appeal from the denial of his third motion for new trial. The supreme court transferred the appeal to our court, which is now before us.

II. Discussion.

LePon raises nine appeal issues in appellant's brief. The State initially contends that we lack jurisdiction of this appeal because LePon is not entitled to

appeal from denial or dismissal of an untimely post-sentencing motion for new trial. It is an appellate court's "duty to dismiss or refuse to consider an appeal which the court has no jurisdiction to entertain." *State v. Coughlin*, 200 N.W.2d 525, 526 (Iowa 1972). We must address this issue first. *Hedlund v. State*, 875 N.W.2d 720, 724 (Iowa 2016) ("We consider challenges to our jurisdiction before other issues in a case.").

III. Appellate jurisdiction.

The State argues that we are without jurisdiction to hear the appeal because LePon does not have a right of appeal from the dismissal of the untimely-filed post-judgment motion for new trial. "[T]he right of appeal is not an inherent or constitutional right; it is a purely statutory right that may be granted or denied by the legislature as it determines." *James v. State*, 479 N.W.2d 287, 290 (Iowa 1991); *see also Wissenberg v. Bradley*, 229 N.W. 205, 209 (Iowa 1929) ("At common law, the right of appeal was unknown. It is purely a creature of statute."). "Unless the statute makes provision therefor, expressly or by plain implication, there is no right of appeal." *Boomhower v. Cerro Gordo Cty. Bd. of Adjustment*, 163 N.W.2d 75, 76 (Iowa 1968); *State v. Olsen*, 162 N.W. 781, 782 (Iowa 1917) ("The right of appeal is purely statutory.").

In a criminal case, appeal as a matter of right only arises from a "final judgment of sentence." Iowa Code § 814.6(1)(a) (2018). Our supreme court has discussed what constitutes a final judgment of sentence.

> Pertinent to this case, a criminal defendant has the "right of appeal" from "[a] final judgment of sentence." [Iowa Code § 814.6.] A previous version of the statute provided that "[a]n appeal can only be taken from the final judgment, and within sixty days thereafter." Iowa Code § 793.2 (1954). The statute was thereafter amended to include

> the clarifying language "judgment *of sentence.*" Iowa Code § 814.6 (1983) (emphasis added). This language continues today. *See* Iowa Code § 814.6(1)(*a*) (2017).
>
> This is consistent with the general rule that the "[f]inal judgment in a criminal case means sentence." "In criminal cases, as well as civil, the judgment is final for the purpose of appeal 'when it terminates the litigation between the parties on the merits' and 'leaves nothing to be done but to enforce by execution what has been determined.'" In contrast, "decisions, opinions, findings, or verdicts do not constitute a judgment or decree."

*State v. Propps*, 897 N.W.2d 91, 96 (Iowa 2017) (first and third alterations in original) (citations omitted from second paragraph). Final judgment in this case occurred when the district court sentenced LePon on January 4, 2016. This is evidenced by LePon's direct appeal at that time and our court's affirmance of his conviction. Based upon *Propps*, the order denying LePon's third motion for new trial is not a "final judgment of sentence."

The rules of appellate procedure also do not support a right to appeal here. In *Coughlin*, the Iowa Supreme Court interpreted 1971's Iowa Rule of Civil Procedure 331, which is materially identical to Iowa Rule of Appellate Procedure 6.103. 200 N.W.2d at 526. Despite the broad language of the rule, the *Coughlin* court held there was no appeal as a matter of right from an order granting a new trial in a criminal case. *See id.* at 526–27. *Coughlin* remains controlling because the rules are virtually identical.[1]

---

[1] *Compare* Iowa R. Civ. P. 331 (1971) ("[A]ny order granting a new trial . . . and any order denying a new trial shall be deemed a final decision."), *with* Iowa R. App. P. 6.103(1) ("An order granting or denying a new trial is a final order."). However, the scope of Iowa Rule of Appellate Procedure 6.103 is limited by the text of the rule: "All final orders and judgments of the district court involving the merits or materially affecting the final decision may be appealed to the supreme court, *except as provided in* this rule, rule 6.105, and *Iowa Code sections 814.5 and 814.6.*" Iowa R. App. P. 6.103(1) (emphasis added).

LePon anticipates this appellate jurisdiction issue.[2]  In his appeal brief, he argues that Iowa Code section 814.6 is unconstitutional as it violates his right to equal protection provided in article I, section 6 of the Iowa Constitution and the Fourteenth Amendment to the United States Constitution.  He contends that the State being permitted to appeal the grant of a defendant's motion for new trial,[3] while a defendant is denied the right to appeal a denial of such a motion violates equal protection.[4]  As our above analysis shows, this is only true regarding a defendant's post-sentencing motion for new trial, since a defendant may appeal a pre-sentencing denial of a motion for new trial within the appeal of his conviction. *See* Iowa Code § 814.6(1)(a).

The constitutionality of a statute is reviewed de novo.  *State v. Mitchell*, 757 N.W.2d 431, 434 (Iowa 2008).  "Statutes are presumed to be constitutional, and a challenger must prove unconstitutionality beyond a reasonable doubt."  *Id.* (citation omitted).  "The challenger must refute every reasonable basis upon which the statute could be found constitutional, and if the statute may be construed in more than one way, we adopt the construction that does not violate the constitution."  *Id.* (citation omitted).

The "constitutional promise of equal protection 'is essentially a direction that all persons similarly situated should be treated alike.'"  *Varnum v. Brien*, 763 N.W.2d 862, 878 (Iowa 2009) (citation omitted).  "[T]he constitutional pledge of

---

[2] By raising this issue LePon appears to recognize a problem with his notice of appeal.

[3] Iowa Code section 814.5(1)(c) provides: "Right of appeal is granted the state from . . . [a]n order arresting judgment or granting a new trial."

[4] Iowa Code section 814.6(1)(a) provides: "Right of appeal is granted the defendant from . . .[a] final judgment of sentence . . . ."

equal protection does not prohibit laws that impose classifications." *Id.* at 882. "Instead, equal protection demands that laws treat alike all people who are 'similarly situated with respect to the legitimate purposes of the law.'" *Id.* (citation omitted). A "threshold test" to the equal-protection analysis under the Iowa Constitution requires a party to show "as a preliminary matter that they are similarly situated" to the class of persons enjoying the legal benefit the party desires. *Id.*; *Nguyen v. State*, 878 N.W.2d 744, 758 (Iowa 2016) ("The first step in our equal protection analysis under the Iowa Constitution is to determine whether there is a distinction made between similarly situated individuals.").

If the statute treats similarly situated persons differently, the court must then determine what level of review is required—strict scrutiny, intermediate scrutiny, or rational basis. *See, e.g.*, *Varnum*, 763 N.W.2d at 880. A statute is subject to strict-scrutiny analysis—the State must show the classification is narrowly tailored to a compelling state interest—when it classifies individuals "in terms of their ability to exercise a fundamental right or when it classifies or distinguishes persons by race or national origin." *In re Det. of Williams*, 628 N.W.2d 447, 452 (Iowa 2001). Intermediate scrutiny "has been applied to statutes classifying on the basis of gender or illegitimacy and requires the party seeking to uphold the statute to demonstrate the challenged classification is substantially related to the achievement of an important governmental objective." *Varnum*, 763 N.W.2d at 880. All other statutory classifications are subject to rational-basis review in which case the person challenging the statute must show the classification "bears no rational relationship to a legitimate government interest." *Williams*, 628 N.W.2d at 452. "A classification is reasonable if it is 'based upon some apparent difference

in situation or circumstances of the subjects placed within one class or the other which establishes the necessity or propriety of distinction between them.'" *State v. Dudley*, 766 N.W.2d 606, 615 (Iowa 2009) (citation omitted). Under this deferential standard, the law is valid "unless the relationship between the classification and the purpose behind it is so weak the classification must be viewed as arbitrary or capricious." *King v. State*, 818 N.W.2d 1, 28 (Iowa 2012) (citation omitted). "A statute is presumed constitutional and the challenging party has the burden to 'negat[e] every reasonable basis that might support the disparate treatment.'" *State v. Willard*, 756 N.W.2d 207, 213 (Iowa 2008) (alteration in original) (citation omitted). Since the right to appeal is purely statutory–not a fundamental right—and the law in question does not treat different genders or races differently, we apply rational basis review here.

We note that this issue—which ultimately boils down to whether we have appellate jurisdiction—was not raised before the trial court, nor could it have been. Although the role of the court of appeals is to apply existing law—not change it—we are not aware of any prior challenges to the constitutionality of section 814.6 or of any Iowa Supreme Court rulings on it. Thus, we will not be contradicting any prior opinion by the supreme court. The issue has been raised, and we are obligated to consider it.

LePon bases his argument on a comparison of Iowa Code section 814.5, which sets out the State's right to appeal, with section 814.6, which sets out the defendant's right to appeal. He argues that the State is given the right to appeal from the court's granting of a defendant's motion for new trial, while the defendant is only given the right to appeal from "a final judgment of sentence." LePon

contends that he and the State must be treated equally in the right to appeal, thereby requiring us to recognize his notice of appeal and address the issues he raises on appeal. As we have noted, this difference in ability to appeal only arises when the criminal defendant has filed a motion for new trial after the final judgment of sentence.

In support of his argument, LePon cites to *Shortridge v. State*, 478 N.W.2d 613 (Iowa 1991), *superseded by statute as stated in James v. State*, 541 N.W.2d 864, 868 (Iowa 1995). There, the supreme court relied on earlier precedent and stated:

> It is true that the right of appeal is purely statutory, not constitutional, and may be granted or denied by the legislature as it determines. This court has held, however, that once a right of appeal is provided "[i]t may not be extended to some and denied to others." When procedures enacted by the State serve to deny one person the right of appeal granted to another, equal protection of the law is denied.

*Shortridge*, 478 N.W.2d at 615 (alteration in original) (citations omitted). However, in *Shortridge*, the court did not undertake a rational basis analysis where the defendant was obligated to show the classification bore no rational relationship to a legitimate governmental interest.

Under the facts in this case, we find that LePon and the State are not similarly situated. First, as noted, the two statutes under comparison allow both the State and LePon to appeal from an adverse judgment. The difference is when the defendant in LePon's position files a post-sentencing motion for new trial. If the motion is granted, a defendant is entitled to a new trial. If the State did not have the statutory authority to appeal the grant of the new trial, the State would then be required to muster up the witnesses and evidence and prepare and

proceed to a retrial, and the trial court required to expend precious judicial resources. If the motion was erroneously granted, the only way to avoid the retrial is for the State to obtain a review by the appellate courts—by being allowed to appeal the post-sentencing motion for new trial. If the post-sentencing motion for new trial is denied, the defendant, who has already had a right to appeal, remains in the same position—convicted and sentenced. Thus, the State and a defendant in LePon's situation are not similarly situated, and LePon fails to meet the threshold question. *See Nguyen*, 878 N.W.2d at 758 ("This requirement of equal protection—that the law must treat all similarly situated people the same—has generated a narrow threshold test. Under this threshold test, if [a party] cannot show as a preliminary matter that he or she are similarly situated, courts do not further consider whether their different treatment under a statute is permitted under the equal protection clause." (citation omitted)).

Even though Iowa Code section 814.6 does not provide LePon an appeal as a matter of right from the adverse ruling on his post-sentencing motion for new trial, this does not end our inquiry. Iowa Code section 814.6(2)(e) provides that "discretionary review may be available" in some cases, including "[a]n order raising a question of law important to the judiciary and the profession." Further, under Iowa Rule of Appellate Procedure 6.108, we may treat LePon's notice of appeal as an application for discretionary review or a petition for writ of certiorari.[5] *See*

---

[5] Iowa Rule of Appellate Procedure 6.108 provides:

> If any case is initiated by a notice of appeal, an application for interlocutory appeal, an application for discretionary review, or a petition for writ of certiorari and the appellate court determines another form of review was the proper one, *the case shall not be dismissed, but shall proceed as though the proper form of review had been requested*. The court may treat the documents upon which the action was initiated as seeking the proper

*State v. Clausen-Klutse*, No. 10-2128, 2011 WL 3196300, at *1 (Iowa Ct. App. July 27, 2011).

These possible options have been discussed in two of our prior cases. In *State v. Perez-Castillo*, No. 15-1400, 2017 WL 362596, at *2 (Iowa Ct. App. Jan. 25, 2017), a panel of our court determined that a defendant who had filed a notice of appeal from denial of a post-sentencing motion for new trial where none was authorized was without jurisdiction and dismissed the appeal. This was done after looking at whether the notice of appeal should be treated as discretionary review or as a petition for writ of certiorari under Iowa Rule of Appellate Procedure 6.108. The court found that discretionary review did not apply and certiorari was not appropriate because "Perez-Castillo [did] not allege the district court exceeded its jurisdiction or acted illegally." *Perez-Castillo*, 2017 WL 362596, at *2.

In *State v. Anderson*, No. 14-1767, 2016 WL 3272143, at *3 (Iowa Ct. App. June 15, 2016), like LePon, the defendant filed a post-sentencing rule 2.24 motion for new trial based on new evidence more than two years after the final judgment of sentence. A panel of this court held:

> Rather, an appeal from the denial of a post-judgment motion for new trial must be taken either: (1) by application for discretionary review under Iowa Rule of Appellate Procedure 6.106 of "[a]n order raising a question of law important to the judiciary and the profession" as permitted by Iowa Code section 814.6(2)(e), or (2) on petition for writ of certiorari under Iowa Rule of Appellate Procedure 6.107, as a claim the district court exceeded its jurisdiction or otherwise acted illegally.

form of review and, in appropriate cases, may order the parties to file jurisdictional statements. Nothing in this rule shall operate to extend the time for initiating a case.
(Emphasis added.)

*Anderson*, 2016 WL 3272143, at *3 (alteration in original).

However, the facts in *Anderson* have one critical difference from this appeal. In *Anderson*, the district court addressed the merits of the defendant's motion for new trial even though it was filed more than two years after sentence was entered; the motion was not dismissed as untimely. *Id.* at *1. As our court noted in the *Anderson* opinion, the State did not move to dismiss the motion as untimely filed and therefore waived the issue. *Id.* at *2. Further, in *Anderson*, our court noted that such a motion could be filed beyond the two-year deadline if there was good cause, and the district court did not make a specific finding that there was not good cause to do so. *Id.* Since the trial court proceeded to rule on the motion rather than dismiss it as untimely, our court took this to imply that the trial court found good cause for the motion to be filed beyond the two-year deadline. *Id.* Based on this analysis, our court determined that the district court "had jurisdiction" to rule on Anderson's motion for new trial and to address the appeal as a petition for writ of certiorari. *Id.* As we discuss later, LePon claims he had good cause for a belated filing beyond the two years, or alternatively, that the two-year deadline is a statute of limitation that the State had to affirmatively assert.

The *Anderson* court further found that to treat the notice of appeal as an application for discretionary review, the issues had to be important to the judiciary and the profession. *Id.* at *3. The court decided the appeal did not involve an important issue and determined that it would treat the notice of appeal as a petition for writ of certiorari—not an application for discretionary review. *Id.* Our supreme court has granted discretionary review "in criminal cases only when it involves questions of law, either substantive or procedural, whose determination will be

beneficial to the bench and bar as a guide in the future." *See State v. Warren*, 216 N.W.2d 326, 327 (Iowa 1974) (citing examples). After discussing these same rules and statutes, the supreme court in *Propps* decided to treat the notice of appeal as a petition for writ of certiorari because it was not an important issue to either the judiciary or the profession. 897 N.W.2d at 97; *accord Anderson*, 2016 WL 3272143, at *3. Based upon this authority and a review of this appeal, we do not find the issues important to the judiciary and the profession. Allowing the notice of appeal to be treated as discretionary review is not appropriate.

This leaves us to determine whether we should treat LePon's notice of appeal as a petition for writ of certiorari. *See* Iowa R. App. P. 6.108. Comparing *Anderson* and *Propps* to *Perez-Castillo*, we find it appropriate to exercise jurisdiction over this matter as if LePon's notice of appeal is a petition for writ of certiorari. We grant the writ and proceed to consider LePon's challenges to the court's dismissal of his third motion for new trial on the record.

The primary difference in applying certiorari legal principles under this rule, as opposed to discretionary review, is that our review is limited to whether the judge "exceeded the judge's jurisdiction or otherwise acted illegally." *See* Iowa R. App. P. 6.107(1)(a).

> A writ of certiorari is limited to triggering review of the acts of an inferior tribunal on the basis the inferior tribunal exceeded its jurisdiction or otherwise acted illegally. Our power to review lower court actions by issuing writs of certiorari is discretionary. Once this court exercises its discretionary power to grant certiorari, we engage in review of the action of the inferior tribunal and either sustain or annul it. No other relief may be granted.

*Crowell v. State Pub. Def.*, 845 N.W.2d 676, 682 (Iowa 2014) (citations omitted). LePon does not challenge the judge's jurisdiction, so we limit our review to whether

that court "acted illegally" in refusing LePon's request to be personally present at the hearing, finding the motion for new trial untimely and dismissing it, and denying the motion for recusal.

IV. Whether LePon had a constitutional right to be personally present at the hearing.

LePon claims he had a constitutional right to be personally present at the hearing on his motion for new trial. Although LePon's motions to be transported to the courthouse for the hearing were not granted, he participated in the hearing on the motion for new trial by telephone. Review of the constitutional right to be present is de novo. *State v. Hendren*, 311 N.W.2d 61, 62 (Iowa 1981).

A defendant has a right to be present at all *critical* stages of a criminal proceeding "where his absence might frustrate the fairness of the proceeding." *Tennessee v. Lane*, 541 U.S. 509, 523 (2004) (citation omitted). A post-sentencing hearing may be a critical stage of the criminal proceedings. *See State v. Alspach*, 554 N.W.2d 882, 884 (Iowa 1996) (determining restitution hearing after sentencing at which the State has compiled statement of pecuniary damages under Iowa Code section 910.3 was critical stage). A relevant consideration for whether a stage is "critical" is whether the defendant may lose certain rights if they are not exercised at that stage. *Mempa v. Rhay,* 389 U.S. 128, 135 (1967).

Further, a critical "stage of the trial" includes "all pretrial and post-trial proceedings when fact issues are presented or when their dispositions, for some other reason, will be significantly aided by the defendant's presence." *State v. Foster*, 318 N.W.2d 176, 179 (Iowa 1982); c*f. State v. Orozco*, 290 N.W.2d 6, 9 (Iowa 1980) (providing that due process requires an accused to be present

"'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to' present his defense" (citation omitted)).

That being said, even if a defendant had a right to be present for a post-sentencing hearing, if the State has shown beyond a reasonable doubt the error complained of did not contribute to the decision, he or she was not prejudiced by not being personally in front of the judge and such error was harmless. *State v. Ezell*, No. 11-1530, 2012 WL 5954592, at *1–2 (Iowa Ct. App. Nov. 29, 2012) (citing *State v. Walls*, 761 N.W.2d 683, 686 (Iowa 2009)).

We find the State established beyond a reasonable doubt that LePon was not prejudiced and it was harmless error for him not to be personally present in the courthouse for the hearing. No witnesses were called that LePon needed to confront or question, and no exhibits were presented that he needed to offer or examine. The hearing consisted of argument on his motion for new trial. LePon was allowed to participate by telephone and make his arguments, as well as make oral motions, including recusal of the judge. LePon filed a post-hearing brief in which he further supported and argued his motions. LePon did not need to be personally present to confer with an attorney as he was self-represented. The court's rulings on the motions were based on legal reasoning—that the third motion for new trial had been filed beyond the two-year deadline which was readily determinable from the court record—the date of final judgment of sentence and filing date of the post-sentencing motion for new trial. LePon's motion to recuse was based solely on his perception of the judge's conduct. LePon's participation by telephone as opposed to being personally present did not frustrate the fairness of the proceedings. We conclude the court did not violate LePon's constitutional

right to be present or act illegally when LePon was not personally present in the courtroom for the hearing.

V. Whether LePon had a right under Iowa Rule of Criminal Procedure 2.27 to be present at the hearing.

Review of the rule-based right is for correction of errors at law. *See State v. Bruce*, 795 N.W.2d 1, 2 (2011) ("To the extent this case turns on the question of the proper interpretation of our rules of criminal procedure, review is for correction of errors at law."). LePon argues that a reading of Iowa Rule of Criminal Procedure 2.27(1) and (3) requires that he be present for the hearing on his post-judgment motion for new trial. The State challenges such interpretation, pointing out that rule 2.27(1) does not require a defendant's presence at post-judgment hearings. It reads:

> In felony cases the defendant shall be present personally or by interactive audiovisual closed circuit system at the initial appearance, arraignment and plea, unless a written arraignment form as provided in rule 2.8(1) is filed, and pretrial proceedings, and shall be personally present at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. In other cases the defendant may appear by counsel.

Iowa R. Crim. P. 2.27(1). We agree with the State, as there is no specific mention in this rule that requires a criminal defendant to be present for a hearing on post-judgment motions. LePon contends that since the exceptions for when presence is not required are specifically set out in rule 2.27(3)[6] and it does not include hearings on post-judgment motions, his presence was required. But this would

---

[6] Iowa Rule of Criminal Procedure 2.27(3) provides that a defendant's presence is not required in two situations: "A corporation may appear by counsel for all purposes" and "The defendant's presence is not required at a reduction of sentence under rule 2.24."

only be true if rule 2.27(1) required his presence. Since it does not, the exceptions in rule 2.27(3) do not apply to LePon. In addition, the rule requiring a defendant in a felony prosecution be present at all stages of trial must be considered together with the rule of harmless error. *State v. Blackwell*, 238 N.W.2d 131, 136 (Iowa 1976) ("The rule requiring a defendant in a prosecution for a felony to be present at all stages of the trial must be considered together with the rule of harmless error."). As we have discussed above, LePon's participation by telephone was adequate, and any error in his not being personally present constitutes harmless error. The trial court did not act illegally in not having LePon personally present for the hearing.

VI. Whether the court failed to determine that LePon's waiver of counsel was knowing, intelligent, and voluntary.

LePon contends that since his motion for new trial was filed in the criminal case, and even though he filed it personally as self-represented, the trial court had an obligation to determine that he was knowingly, intelligently, and voluntarily waiving his right to be represented by counsel. Constitutional issues related to right to counsel are reviewed de novo. *State v. Rater*, 568 N.W.2d 655, 657 (Iowa 1997). We note that LePon's brief argues under both the Iowa Constitution (art. I, sections 9 and 10) and the Federal Constitution (Sixth and Fourteenth Amendments) right to counsel. We must first determine if LePon had a right to counsel; if he did not, then his claim that the court violated that right by not properly determining his waiver was knowing, intelligent, and voluntary has no basis.

The Sixth Amendment to the United States Constitution guarantees that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the

Assistance Of Counsel for his defense." U.S. Const. amend. VI. However, the right to court-appointed counsel under the Sixth Amendment has been limited to apply only through the first appeal: "Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Since LePon's third motion for new trial was filed post-appeal, he has no right to counsel based on the Federal Constitution. Thus, we need only address the right to counsel on this post-judgment motion under state constitution or statutory authority.

The Iowa Constitution provides:

> In all criminal prosecutions, and in cases involving the life, or liberty of an individual the accused shall have a right to a speedy and public trial by an impartial jury; to be informed of the accusation against him, to have a copy of the same when demanded; to be confronted with the witnesses against him; to have compulsory process for his witnesses; and, to have the assistance of counsel.

Iowa Const., art. I, § 10. LePon does not argue that the Iowa Constitution's right to counsel should be interpreted more broadly than that afforded by the Federal Constitution. Under those circumstances, Iowa appellate courts usually construe the rights coextensively. *Nguyen*, 878 N.W.2d at 757; *see also Doerflein v. Bennett*, 145 N.W.2d 15, 18 (Iowa 1966) (noting Iowa Constitution contains "substantially the same provisions" as Federal Constitution regarding the constitutional right to counsel).

The State argues that if the Iowa Constitution is interpreted and the right to counsel is construed the same as the federal right, then LePon was not entitled to court-appointed counsel on his third motion for new trial that was filed post-appeal.

We also note that Iowa Rule of Criminal Procedure 2.28 assists in defining the right to counsel in Iowa.

> Every defendant, who is an indigent person as defined in Iowa Code section 815.9, is entitled to have counsel appointed to represent the defendant at every stage of the proceedings from the defendant's initial appearance before the magistrate or the court through appeal, including probation revocation hearings, unless the defendant waives such appointment.

Our supreme court has interpreted the Iowa Constitution's right to counsel more broadly than the Federal Constitution. Specifically, it has held that an indigent defendant is entitled to court-appointed counsel post-appeal when the issue involves restitution, but only if the restitution was imposed as part of the criminal sentence. *Alspach*, 554 N.W.2d at 884. The court reasoned:

> If restitution had been finalized at the time of sentencing, he would have had benefit of counsel to advance these challenges. Yet the State is authorized by section 910.3 to compile a statement of further damages *after* sentencing. The defendant, at this later date, should not be denied counsel simply because the amount of pecuniary damages was unavailable on the day of sentencing. If the State's reasoning were adopted, the mere fortuity of whether restitution figures were available at sentencing would determine an indigent defendant's right to appointed counsel on restitution issues.
> We do not mean to suggest by this opinion that a defendant is entitled under all circumstances to court-appointed counsel when challenging restitution orders. Our ruling is limited to challenges to restitution imposed as part of the original sentencing order, or supplemental orders, under Iowa Code section 910.3. When, pursuant to Iowa Code section 910.7, a later action is initiated to modify the plan or extend its completion date, the suit is civil in nature and not part of the criminal proceedings. The offender would ordinarily have no right to appointed counsel under such circumstances.

*Id.* The supreme court further refined its position as to what it meant in *Alspach* in *State v. Blank*, stating, "Our decision was strictly limited, however, to challenges aimed at the *original* sentence, and supplements thereto; later *modifications* to the

restitution plan, sought by offenders or corrections officials, are governed by the civil remedies afforded under section 910.7." 570 N.W.2d 924, 926 (Iowa 1997).

The situation described in *Alspach* and *Blank* is similar to what is present here. LePon's current motion is an attack on his conviction and sentence. Under rule 2.24(2)(b)(8), LePon could file a motion for new trial in his criminal case based upon newly-discovered evidence up to two-years after he was sentenced.[7] Criminal defendants do not always control when newly-discovered evidence comes to their knowledge. The rule—as well as the post-conviction-relief statute—recognizes that such evidence may be discovered after sentencing. *See* Iowa Code chapter 822. If the motion for new trial is filed in the criminal proceedings, a logical extension of the reasoning in *Alspach* would dictate that LePon was entitled to court-appointed counsel, since the motion is a direct attack on the validity of his conviction. In addition, the rule further provides that the defendant can avoid the two-year limitation: "but such motion may be considered thereafter upon a showing of good cause." Iowa R. Crim. P. 2.24(2)(b)(8.) It makes sense that court-appointed counsel may not only assist with the motion but also with the showing of good cause for filing beyond the two-year deadline.

---

[7] The legislature has extended to criminal defendants two separate opportunities to attack a conviction based upon new evidence—Iowa Rule of Criminal Procedure 2.24(2)(b)(8) and Iowa Code section 822.2—the former within the criminal case and the latter under civil postconviction relief. However, even if filed under chapter 822, the applicant is entitled to court-appointed counsel. *See* Iowa Code § 822.5 ("Unless the applicant is confined in a state institution and is seeking relief under section 822.2, subsection 1, paragraphs 'e' and 'f', the costs and expenses of legal representation shall also be made available to the applicant in the preparation of the application, in the trial court, and on review if the applicant is unable to pay. However, nothing in this section shall be interpreted to require payment of expenses of legal representation, including stenographic, printing, or other legal services or consultation, when the applicant is self-represented or is utilizing the services of an inmate.").

Based on the foregoing, we assume without deciding LePon had a right to counsel and return to LePon's waiver issue. LePon argues the court failed to follow established case precedent to determine that he knowingly, intelligently, and voluntarily waived his right to counsel.

> Unlike the Sixth Amendment right to counsel, which is in effect until waived, the right of self-representation is not effective until asserted. The Eighth Circuit Court of Appeals has held that "to invoke his or her right to represent himself or herself, a defendant must knowingly, intelligently, voluntarily, and unequivocally waive his right to counsel and state his intentions to represent himself."

*State v. Rater*, 568 N.W.2d 655, 658 (Iowa 1997) (citations omitted). We observe that LePon does not claim on appeal that his waiver was not knowing, intelligent and voluntary—only that the court failed to conduct the colloquy on the record to establish such. We conduct a de novo review to determine this claim. *Id.* at 657.

"The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Faretta v. California*, 422 U.S. 806, 819 (1975). Although most criminal defendants would fare better with counsel, the defendant will suffer the consequences of a conviction—making the right a personal one. *Id.* at 820. Because a defendant choosing to represent himself relinquishes the benefits associated with the assistance of counsel, he or she must "knowingly and intelligently" waive that right. *Id.* at 835. To ensure a waiver of counsel is knowing, intelligent, and voluntary, the district court "must investigate [the request to proceed self-represented] as long and as thoroughly as the circumstances of the case before [it] demand." *State v. Cooley*, 608 N.W.2d 9, 15 (Iowa 2000) (citation omitted). "The degree of inquiry necessary to assure a valid waiver varies with the

nature of the offense and the ability of the accused to understand the process." *State v. Stephenson*, 608 N.W.2d 778, 782 (Iowa 2000); *see also State v. Hindman*, 441 N.W.2d 770, 772 (Iowa 1989) (allowing that a limited inquiry may be sufficient depending on the circumstances).

The United States Supreme Court has taken a "pragmatic approach" to the waiver-of-counsel question and to evaluating "the type of warnings and procedures that should be required before a waiver of that right will be recognized." *Patterson v. Illinois*, 487 U.S. 285, 298 (1988). The inquiry is not designed to test the competency or skill of a defendant in effectively representing himself; rather, it is a safeguard to ensure that the defendant seeking to represent himself "knows what he is doing and his choice is made with eyes open." *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279 (1942). Substantial compliance is sufficient. *See State v. Milton*, No. 04-0753, 2005 WL 1630040, at *5–6 (Iowa Ct. App. July 13, 2005).

The State argues that upon a review of the entire record, under the facts of this case, LePon made a knowing, intelligent, and voluntary waiver. Our review discloses the following. First, in his motion for new trial, LePon stated: "Mr. LePon elects to proceed pro se in regard to the instant motion, however, the defendant asks the court to appoint standby counsel. The Defendant does not relinquish his right to proceed pro se, and asserts that the appointment of counsel shall only be in the form of standby."[8] LePon's request to proceed self-represented was unequivocal.

---

[8] We note that appointment of standby counsel is discretionary with the court. "Although '[p]articipation by counsel with a *pro se* defendant's approval is . . . constitutionally unobjectionable,' the trial court is not constitutionally required to appoint standby counsel."

In his criminal case, before trial, LePon filed a motion to proceed pro se. On November 14, 2014, the court held a lengthy hearing during which the trial judge conducted an exchange with LePon on the record that followed the colloquy suggested by our supreme court to establish a knowing and voluntary waiver of counsel. *See State v. Martin*, 608 N.W.2d 445, 450 (Iowa 2000) (suggesting courts use a colloquy found in the federal judges' bench book to make sure the waiver is knowing, intelligent, and voluntary). At the conclusion of that hearing, the court found LePon had the capacity to knowingly, intelligently, and voluntarily waive counsel and allowed him to proceed self-represented, while also appointing standby counsel. LePon self-represented for the next two and one-half months, until shortly before trial, when he again requested appointed counsel.

After his conviction, on appeal, even though represented by court-appointed counsel, LePon filed an extensive pro se supplemental brief. He also personally filed the second motion for new trial and, after its dismissal, filed the petition for writ of certiorari with the supreme court. He also filed the motion to have the single justice order denying his writ reviewed by a three-justice panel. LePon personally filed this third motion for new trial, participated in the hearing, and pursued this appeal without the assistance of counsel. During all of these proceedings, at no time does the record reflect LePon challenged any court action by complaining that

---

*State v. Johnson*, 756 N.W.2d 682, 687 (Iowa 2008) (alteration in original) (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 182–83 (1984)).

the courts failed to make a record to assure that his self-representation was knowing, intelligent, and voluntary.[9]

The advanced stage of these proceedings and the limited nature of the third motion for new trial and hearing suggest a limited duty on the court to determine the voluntariness of LePon's waiver. The court knew LePon understood the nature of the proceedings—he initiated them. LePon argued for a right to be physically present at the hearing and buttressed his argument with the fact that he was acting as his own attorney. Most important, earlier in this criminal case, the trial court had engaged LePon in the required colloquy and determined his waiver of counsel was knowing, intelligent, and voluntary. Under these facts, we find that another such exchange with LePon was unnecessary. The trial court had earlier complied with the requirement of determining LePon's waiver was knowing and voluntary and that process did not need to be repeated again with respect to self-representation on his third motion for new trial. The court did not act illegally in not engaging LePon to determine at this late stage of the criminal case that his self-representation was knowing and voluntary.

VII. Whether the court in this appeal is again required to address LePon's second motion for new trial.

In a convoluted argument in his appeal brief, LePon argues that his second motion for new trial should be addressed on this appeal and that he is entitled to remand. This is an obvious attempt to resurrect the second motion in order to

---

[9] We note that the cases dealing with waiver of counsel are at the trial court level. We discern no case that requires a similar colloquy with a self-represented litigant at the appellate level. Most of the questions proposed for the on-the-record colloquy with a defendant to determine a voluntary waiver of counsel concern knowledge of the rules and procedures related to a jury trial.

avoid the two-year deadline in Iowa Rule of Criminal Procedure 2.24(2)(b)(8), to which his third motion for new trial succumbed. We do not accept LePon's request for a number of reasons.

First, the matter before us is on a writ of certiorari, which limits us to reviewing whether the trial court acted illegally in dismissing LePon's third motion for new trial. *See* Iowa R. App. P. 6.107(1)(a). Second, LePon did not preserve the issue for consideration here. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Finally, the supreme court, both by a single justice and confirmed by a three-justice panel, denied LePon's petition for writ of certiorari from the trial court's dismissal of his second motion due to lack of jurisdiction since LePon's direct appeal of his conviction and sentence was pending. *See State v. Mallett*, 677 N.W.2d 775, 777 (Iowa 2004).[10] The supreme court's denial of the petition for writ of certiorari procedurally ended the second motion for new trial. We are neither at liberty to review the earlier disposition of LePon's second motion for new trial, *see Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981) (providing the principles of res judicata), nor allowed to review an order by our supreme court.

VIII. Whether the two-year time limit to file a motion for new trial contained in Iowa Rule of Criminal Procedure 2.24(2)(b)(8) is a statute of limitations that had to be raised as an affirmative defense.

LePon contends that the two-year time limit to file a motion for new trial contained in Iowa Rule of Criminal Procedure 2.24(2)(b)(8) is a statute of limitations that had to be raised as an affirmative defense. If it is a statute of

---

[10] LePon claims that *Mallett* was incorrectly decided. Our court is not at liberty to reverse opinions of the supreme court. *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014).

limitations, as LePon claims, then the fact that the motion for new trial is filed beyond the two years does not automatically result in a lack of jurisdiction in the trial court and require dismissal on that basis. Rather, LePon contends the State had to assert the statute of limitation as an affirmative defense and since it failed to do so, the defense was waived.

Under supreme court precedent, however, the two-year period set out in the rule is not a statute of limitation. *See State v. Olsen*, 794 N.W.2d 285, 287 (Iowa 2011). As explained in *Olsen*, the reason this is so is because final judgment has already been entered and the rule provides a deadline for filing the post-judgment motion:

> As discussed below, however, our cases maintain that, absent a valid post-judgment motion, *a district court loses jurisdiction* over a matter once a final judgment is rendered.
> . . . .
> . . . Thus, absent a rule or motion retaining jurisdiction in the court following a final order, "[a] final judgment puts it beyond the power of the trial court to return the parties to their original positions."

794 N.W.2d at 287–88 (alteration in original) (emphasis added) (citations omitted). Thus, as *Olsen* holds, if the post-judgment motion is not timely filed, the court loses jurisdiction since final judgment had previously been entered. *State v. Mandicino*, 509 N.W.2d 481, 482 (Iowa 1993) ("Want of subject matter jurisdiction can be raised at any time. . . . [S]ubject matter jurisdiction is a statutory matter and cannot be waived by consent, waiver, or estoppel." (citation omitted)). LePon did not timely file the current post-judgment motion for new trial,[11] and the court found that LePon presented no basis for a filing beyond the two-year period, therefore the

---

[11] LePon's judgment of sentence was entered on January 4, 2016, and he did not file his third motion for new trial until February 9, 2018, more than two years later.

court did not have jurisdiction to act upon the motion. The trial court did not act illegally in entering the dismissal order.

IX. Whether the district court committed reversible error in sua sponte raising and ruling upon timeliness and good cause.

LePon claims his due process rights were violated by the trial court when it entered a ruling dismissing his motion without first giving notice that jurisdiction would be addressed by the court. Review of issues implicating a constitutional right is de novo. *State v. Smith*, 546 N.W.2d 916, 920 (Iowa 1996).

LePon's argument in this division is an extension of his argument in the previous division—that the two-year filing requirement from judgment of sentence is a statute of limitation. But as noted above, our supreme court held in *Olsen* that failure to timely file a post-judgment motion is jurisdictional. 794 N.W.2d at 287–88. Our case law further holds that the courts may address jurisdiction issues at any time. *Mandicino*, 509 N.W.2d at 482. We find that the trial court did not violate LePon's right to due process in sua sponte addressing the jurisdiction of the court and dismissing LePon's motion and, thus, did not act illegally.

X. Whether the district court violated LePon's due process rights regarding fair notice and an opportunity to be heard.

LePon contends that before dismissing his motion for new trial based on his failure to file it within the rule-prescribed two-year period, the court was obligated under due process to give him notice of this issue and an opportunity to be heard. As LePon claims a due process violation, our review is de novo. *Smith*, 546 N.W.2d at 920.

LePon relies on the due process provisions in article I, section 9 of the Iowa Constitution and the Fifth and Fourteen Amendments to the United States

Constitution. We again note that the premise of LePon's argument relates back to his arguments in previous divisions of his brief—that the two-year period for filing the motion for new trial is a statute of limitation that had to be raised by the State as an affirmative defense or waived. We have already addressed this argument and based upon supreme court precedent in *Olsen* decided it adversely to LePon.

Upon review of LePon's motion for new trial, in the first paragraph he cites rule 2.24(2)(b)(8), which contains the two-year deadline for filing the motion or the good-cause exception. LePon was familiar with this rule and the two-year deadline, and by simple calculation from dates readily known to him, he knew or should have known the motion was being filed late. When he dated his signature on February 7, 2018, the motion was already past the deadline. A review of the transcript for the hearing on the motion held on February 26, 2018, reveals that LePon did not present any argument or facts to excuse the late filing.

Following the court's order dismissing LePon's third motion for new trial, LePon filed a motion to enlarge. In the motion, LePon raised the procedural history of his criminal case— particularly his second motion for new trial, its denial, and the petition for writ of certiorari with the supreme court, which was denied—as creating a procedural gauntlet that constituted good cause for filing the current motion beyond the two years. He also argues a relation-back doctrine, which we discuss below, between his second and third motions for new trial to get around the two-year deadline.

As expressed in the rule, the burden was upon LePon to show good cause for the late filing of his third motion for new trial. Upon our review of the record, we do not find LePon had good cause for the late filing. The arguments LePon raised

in his motion to enlarge do not constitute good cause for not filing within the two-years provided in the rule. The court may sua sponte consider jurisdiction, and LePon, after receiving the court ruling, failed to establish good cause. In our review of this issue on appeal, we conclude LePon was afforded his constitutional rights of notice and hearing. The district court did not act illegally in this regard.

XI. Whether the relation-back doctrine or principles related to Iowa's saving statute should apply in this case.

LePon contends that the court's failure to apply either a savings statute or relation-back rule to his last-filed motion for new trial was a violation of his Iowa and federal substantive and procedural due process rights. Iowa Const, art. I §§ 6, 9; U.S. Const. amends. V, XIV. Since LePon frames this as a due process claim, our review is de novo. *Smith*, 546 N.W.2d at 920.

LePon again appears to recognize that his third motion for new trial was untimely and tries to save it by asserting a novel argument—that savings statutes and relation-back rules of procedure that apply only to pleadings should be applied to his motion. LePon concedes in his appeal brief: "There are several variations of the savings statute in the Iowa Code, and though no individual saving statute is exactly on point here, there is no reason why the rationale behind the principle of the statutes could not apply."[12] Iowa Code section 614.10 provides:

> If, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first.

---

[12] Although LePon states there are "several variations of the savings statute in the Iowa Code," he only points us to section 614.10. He also cites us to *Furnald v. Hughes*, 804 N.W.2d 273 (Iowa 2011), but that case also only discusses section 614.10.

The statute specifically limits its application to the "commencement of an action." Iowa Code § 614.10.

The relation-back doctrine is found in Iowa Rule of Civil Procedure 1.402. The title of the rule is "General rules of pleading." Subsection 5, which contains the relation-back doctrine is entitled "Making and construing amendments." It, too, limits its application to pleadings when it states the pleading "relates back to the date of the original *pleading.*" Iowa R. Civ. P. 1.402(5) (emphasis added). It also provides, "An amendment changing the party against whom *a claim* is asserted relates back . . . and . . . *the party to be brought in by amendment. . . .*" *Id.* (emphasis added). Our supreme court has held that the relation-back doctrine governs only pleadings. *Estate of Kuhns v. Marco*, 620 N.W.2d 488, 491 (Iowa 2000). Motions are not pleadings. *Stanton v. City of Des Moines*, 420 N.W.2d 480, 482 (Iowa 1988). Iowa Rule of Civil Procedure 1.401 defines pleadings and does not include motions for new trial.

LePon's motion was not entitled to the application of either the savings statute in Iowa Code section 614.10 or the relation-back doctrine in Iowa Rule of Civil Procedure 1.402(5). Therefore, there was no due process violation under either the Iowa or Federal Constitution in not applying either to LePon's motion. The district court did not act illegally in ruling on and dismissing LePon's third motion for new trial.

XII. Whether the district court acted illegally in failing to grant LePon's motion to recuse.

LePon made an oral motion during the hearing on his motion for new trial for the judge to recuse himself. LePon further argued the recusal motion in his

post-hearing brief. When the court entered its ruling denying the recusal motion, as well as dismissing the motion for new trial, LePon again raised the recusal issue in his motion to enlarge the court's ruling. Review of denial of a motion to recuse is for abuse of discretion. *State v. Milsap*, 704 N.W.2d 426, 432 (Iowa 2005). The court abuses its discretion when its decision is based on untenable grounds or it has acted unreasonably. *Id.* "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Id.* (citation omitted). Our review on certiorari is whether the trial court acted illegally in denying the recusal motion. Iowa R. App. P. 6.107.

LePon claims that the court failed to comply with Rule 51:2.2 of the Iowa Code of Judicial Conduct entitled "Impartiality and fairness," which states: "A judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially." LePon criticizes the judge's "minimalist" approach in his rulings. He also complains that his motion for new trial was set for hearing by another judge and then Judge Finn presided over the hearing. He argues that the judge that set the hearing had the responsibility to hold the hearing, and that because Judge Finn presided over that hearing, LePon believes he had some special bias against him. He also argues that the hearing must have been assigned to Judge Finn through an ex parte communication, which LePon contends violates Iowa Code of Judicial Conduct rule 51.2.9 against ex parte communications. LePon lacks a basic understanding of how the judicial system and case assignments operate. We find no violation of judicial conduct in this regard.

We have reviewed the record, particularly the transcript of the hearing held on February 26, 2018, when LePon made his oral motion for recusal. It is

interesting to note that during the hearing, Judge Finn comments that he does not believe he has previously met LePon. LePon confirms this and states: "I'm only basing [the motion to recuse] as far as what has been the state of proceedings thus far." It is obvious from LePon's statement that he made the recusal motion solely on Judge Finn's participation in his official judicial capacity in the case.

As to a judge's recusal, "[t]he test is whether a reasonable person would question the judge's impartiality." *McKinley v. Iowa Dist. Ct.*, 542 N.W.2d 822, 827 (Iowa 1996). We note that in the order denying LePon's oral recusal motion, the court cites the supreme court case of *Milsap*, which succinctly summarizes the law regarding judicial recusal:

> Accordingly, Iowa's Code of Judicial Conduct provides that "[a] judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." This test for disqualification is an objective one. The burden of showing grounds for recusal is on the party seeking recusal.
> . . . Only personal bias or prejudice stemming from an extrajudicial source constitutes a disqualifying factor. Judicial predilection or an attitude of mind resulting from the facts learned by the judge from the judge's participation in the case is not a disqualifying factor. In addition, "actual prejudice must be shown before a recusal is necessary."

704 N.W.2d at 432 (citations omitted).

Based upon our review, we find Judge Finn did not have a personal bias or prejudice stemming from an extrajudicial source. His only dealings with LePon were within the judicial context. LePon concedes this. The burden was on LePon to establish an actual prejudice of the judge, and he did not do so. Thus, the district court did not abuse its discretion in denying LePon's motion for recusal and did not act illegally in so ruling.

XIII. Conclusion.

Having given due consideration to each issue raised by LePon on the certiorari review, we find the trial court did not act illegally and annul the writ.

**WRIT ANNULED.**